Ted WANDERER, individually as a general partner of Ray De Los Conejos, Ltd., and on behalf of those similarly situated, Plaintiffs–Appellees,

v.

David B. JOHNSTON; Dennis A. Leatherman; J. Richard Rampton; Agricultural Services Associates; David B. Johnston, Inc.; Promorex Corporation, Defendants–Appellants.

No. 88–15759.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 18, 1990.

Decided Aug. 9, 1990.

---

Thomas M. Burton, Burton, Brunt & Robbins, Pleasanton, Cal., for defendants-appellants.

Jon R. Vaught, Day Law Corp., Oakland, Cal., for plaintiffs-appellees.

Before HUG, SKOPIL and SCHROEDER, Circuit Judges.

SCHROEDER, Circuit Judge:

This is an appeal from a very substantial monetary default judgment entered in favor of the plaintiffs-appellees as sanctions under Federal Rule of Civil Procedure 37 for flagrant discovery violations by the defendants-appellants.[1] Defendants appeal, contending the judgment constituted an abuse of discretion amounting to a violation of due process because of claimed inaccuracies and omissions in the findings proposed by the magistrate and adopted by the district court. We have reviewed the record in light of those contentions and conclude that the magistrate's findings were fully supported by the evidence in every material respect. The severe sanction of default was justified by the defendants' repeated and inexcusable obstructions of every type of discovery attempted by the plaintiffs. *See National Hockey League v. Metro Hockey Club, Inc.,* 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976). We reach the same conclusion that District Judge Weigel reached when he imposed the sanctions upon the recommended findings of fact and conclusions of law of Magistrate Joan Brennan.

[1] The sanction was imposed pursuant to Federal Rule of Civil Procedure 37(b)(2)(C) which provides:

(b) **Failure to Comply with Order.**

. . . .

(2) **Sanctions by Court in Which Action is Pending.** If a party or an officer, director, or managing agent of a party or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a party fails to obey an order to provide or permit discovery, including an order made under subdivision (a) of this rule or Rule 35, or if a party fails to obey an order entered under Rule 26(f), the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

. . . .

(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party.

Appellants now, and belatedly, also object to the amount of the damages which was awarded, $25 million. The record reflects that those damages were imposed pursuant to a proposed order to which the defendants never objected and after a hearing at which the defendants chose not to appear. We affirm the judgment of the district court in all respects.

### Events Leading to the Sanction Order

The plaintiffs in the underlying litigation are members of a group of investors who alleged that they had been defrauded by a limited partnership scheme to breed rabbits for meat and pelts. The promoters of the scheme were the individual defendants, David B. Johnston, Dennis A. Leatherman and Richard Rampton. Also involved and named as defendants were corporations whose principal or sole owners were the individual defendants. Plaintiffs claimed that they were fraudulently induced to invest in the scheme upon misrepresentations by the defendants of the value of the rabbits and the market for such rabbits. The plaintiffs apparently invested more than $3 million in cash and $18 million in promissory notes.

Plaintiffs filed the case in July 1985 alleging causes of action under the Securities Act, 15 U.S.C. §§ 77a–77aa (1988), the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968 (1988), and pendent claims for fraud and deceit. The complaint sought actual damages of $25 million, additional interest, additional unspecified damages, and treble damages under RICO. In response, the defendants filed counterclaims for breach of contract, interference with prospective economic advantage and inducing breach of contract.

Plaintiffs' discovery efforts began in May 1986. The magistrate's findings document the sorry obstacle course defendants required plaintiffs to undergo for the next two years. The defendants' conduct with respect to depositions is illustrative. For example, on July 29, 1986, defendants failed to appear for their noticed depositions. The only excuse offered by their counsel was that another attorney was ill and could not accompany them. On August 7, 1987, defendant Leatherman failed to appear at a scheduled deposition. Leatherman again did not appear on the rescheduled date of August 10. On August 11, 1987, defendant Rampton failed to appear at his scheduled deposition. His lawyer indicated an inability to reach Rampton. On August 13, 1987, defendant Johnston failed to appear at a noticed deposition. In the end, Rampton, Johnston and Leatherman each failed to appear for three properly noticed depositions. The defendants never obtained a protective order relieving them of any obligation to appear, and they did not even inform opposing counsel on most occasions of their intention not to appear.

The record with respect to other discovery is no better. Between May 27, 1986 and January 13, 1988, there were eleven hearings and at least nine orders compelling production of documents described in the plaintiffs' first request for production of documents. Although District Judge Weigel on September 9, 1986 held that the defendants had waived any objections to the production by their failure to make any timely effort to seek a protective order, the defendants continued to withhold the documents under various claims of privilege. The correctness of Judge Weigel's ruling and the unavailability of any privilege to the defendants has never been seriously disputed in the case. A second request for production, on June 16, 1987, yielded no response whatsoever from the defendants.

The record on interrogatories is similar. On June 16, 1987, plaintiff served a first set of interrogatories on all the defendants. Johnston and Rampton did not respond that year. The response of the remaining defendants was untimely, and purported to be a "joint answer" which did not enable the plaintiffs to determine the position of each defendant, in apparent contravention of the requirement of Federal Rule of Civil Procedure 33 that interrogatories be answered "separately and fully," and "by the party served." Similarly, the corporate defendants did not verify their interrogatories in

contravention of the requirement of Rule 33 that answers be signed.

The magistrate summarized in the following language:

21. Since this case was filed, defendants have done nothing, as far as discovery is concerned, in a timely fashion. The record discloses that defendants have consistently failed to respond, not only to discovery requests from plaintiffs but also to the orders of this court. Defendants have been given repeated opportunities to comply with this court's discovery orders and thereby avoid entry of default judgment. Defendants have twice been warned, first by Judge Weigel and again by Magistrate Brennan, of the possible consequences of their failure to comply with this court's orders or the applicable rules of discovery. However, defendants have exhibited complete indifference to these warnings, the orders of this court and their discovery obligations, thereby thwarting plaintiffs' every attempt to secure basic, legitimate discovery. We are therefore of the opinion that the record vividly demonstrates defendants' flagrant bad faith and willful disregard of their discovery responsibilities, justifying entry of judgment against defendants and dismissal of the counterclaims herein.

Magistrate's Proposed Findings of Fact, Conclusions of Law and Recommendations ("Findings of Fact") 24–25 (citations omitted).

The magistrate's proposed order recognized the drastic nature of the default sanction imposed, and the need to be sure that less stringent sanctions would be unavailing. *See United States for Use of Wiltec Guam v. Kahaluu Const.,* 857 F.2d 600, 604 (9th Cir.1988) (citing *Malone v. United States Postal Service,* 833 F.2d 128, 131 (9th Cir.1987), *cert. denied,* 488 U.S. 819, 109 S.Ct. 59, 102 L.Ed.2d 37 (1988)). She concluded:

in this case however the record demonstrates the defendants have been given numerous opportunities to comply and that in fact the lesser sanctions imposed by the magistrate have been met with complete indifference by defendants. There is therefore no reason to suppose that the imposition of lesser sanctions to a future noncompliance will be any more successful than in the past.

Findings of Fact 26. The district judge then approved the magistrate's recommendations to enter default judgment in favor of the plaintiffs as the sanction for defendants' discovery evasion.

*Legal Analysis*

■ As Professor Rosenberg has said, Rule 37 sanctions were intended to "punish[ ] evasion of pretrial discovery." Rosenberg, *Sanctions to Effectuate Pretrial Discovery,* 58 Colum.L.Rev. 480, 482 (1958); *see* 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2281 at 753 (1970) ("Without adequate sanctions, the procedures for discovery would be ineffectual."). The leading Supreme Court decision under modern Rule 37 is *National Hockey League,* which the circumstances of this case regrettably echo. The facts in that case were as follows:

After seventeen months where crucial interrogatories remained substantially unanswered despite numerous extensions granted at the eleventh hour and, in many instances, beyond the eleventh hour, and notwithstanding several admonishments by the Court and promises and commitments by the plaintiffs, the Court must and does conclude that the conduct of the plaintiffs demonstrates the callous disregard of responsibilities counsel owe to the Court and to their opponents. The practices of the plaintiffs exemplify flagrant bad faith when after being expressly directed to perform an act by a date certain, *viz,* June 14, 1974, they failed to perform and compounded that noncompliance by waiting until five days afterwards before they filed any motions. Moreover, this action was taken in the face of warnings that their failure to provide certain information could result in the imposition of sanctions under Fed.R.Civ.P. 37.

*Id.* 427 U.S. at 640–41, 96 S.Ct. at 2779–80.

■ The Court in *National Hockey League* granted district courts considerable

discretion to impose the extreme sanction of dismissal or default where there has been flagrant, bad faith disregard of discovery duties. *Id.* at 643, 96 S.Ct. at 2781.

■ Our own court has fashioned a set of factors for the district court to apply in considering whether a dismissal of default is appropriate as a Rule 37 sanction. The court is to consider:

> (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to [the party seeking sanctions]; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions.

*Malone,* 833 F.2d at 130 (quoting *Thompson v. Housing Authority,* 782 F.2d 829, 831 (9th Cir.), *cert. denied,* 479 U.S. 829, 107 S.Ct. 112, 93 L.Ed.2d 60 (1986)). While a district court need not make explicit findings regarding each of these factors, if it does not, the appellate court must review the record independently to determine whether the sanction was an abuse of discretion. *Id.*

■ The first two of these factors favor the imposition of sanctions in most cases, while the fourth cuts against a default or dismissal sanction. Thus the key factors are prejudice and availability of lesser sanctions.

We have found the element of prejudice to be essential, stating that sanctions which interfere with the litigants' claim or defenses violate due process when they are imposed "merely for punishment of an infraction that did not threaten to interfere with the rightful decision of the case." *Wyle v. R.J. Reynolds Industries, Inc.,* 709 F.2d 585, 591 (9th Cir.1983) (citation omitted). Delay alone, without a focus on its effects, will not justify dismissal or default. We have held that a failure to appear at a deposition did not prejudice the outcome of the action where the deposition was in fact taken before the motion for sanctions was heard. *See Kahaluu,* 857 F.2d at 604 (citing *Mir v. Fosburg,* 706 F.2d 916, 919 n. 2 (9th Cir.1983)).

■ Here, however, the failures of the defendants to appear at their depositions, which were compounded by repeated noncompliance with court orders to produce documents constituted a clear interference with the plaintiffs' ability to prove the claims and to obtain a decision in the case. The existence of prejudice is palpable.

■ The remaining requirement, that the court consider less severe alternatives, has also clearly been satisfied. The record fully supports the court's conclusion that to repeat the imposition of lesser sanctions would be unavailing.

The defendants on appeal actually dispute relatively few of the magistrate's factual findings. Defendants' only meritorious contention is that the magistrate was mistaken in finding that defendants Leatherman and Rampton failed to appear four times when, in fact, they did appear on one occasion and failed to appear three times. However, in light of the three absences by these defendants coupled with the failure to comply with the multiple production requests, this inaccuracy is immaterial.

■ More typical of defendants' complaints with the magistrate's findings is their objection to a finding regarding one of the production orders. The finding was that "[D]efendants neither produced the documents, nor did defendants submit a declaration by September 4, 1986 stating why the documents could not be produced." The finding was part of a longer narrative and was entirely accurate. Defendants argue that "defendants filed their declaration by September 5, a day late...." Thus, the contention of error is but a qualification of acknowledged facts. More important, however, is the fact that September 5 did not mark any significant discovery compliance. The magistrate's narrative regarding this set of documents did not end on September 5. Rather, on that day, in a telephonic conference, the magistrate ordered the defendants to appear before her on September 8, 1986 and to bring with them the requested documents. Defendants Leatherman and Rampton failed to appear. Defendant Johnston, who did appear, failed to

bring the documents. The magistrate ordered Johnston to produce the documents by September 12. Finally, three days after that due date, the requested documents were produced.

■ The defendants on appeal also argue that because discovery orders were "substantially" complied with, default is inappropriate. However, defendants have a unique view of what substantial compliance entails. For example, defendant Leatherman was ordered to produce certain documents on February 13, 1987. On February 23, 1987, defendants finally advised plaintiffs that the documents could be retrieved at the Oakland Airport. On another occasion, in response to the finding that they disobeyed an order to produce certain documents "[i]n the offices of plaintiffs' counsel in Oakland, California," defendants assert that the documents were available not in the office of plaintiffs' counsel, but in defendants' counsel's office, and not in Oakland but in Oregon. In a third incident, responses to a set of interrogatories were due no later than July 16, 1987. Some defendants "complied" by providing proper verifications on March 7, 1988, almost six months later. To the day of final judgment, defendants had failed to comply with a substantial number of orders. Defendant Agricultural Services Associates ("ASA") had not yet verified its responses to the interrogatories that were due no later than July 16, 1987; the three individual defendants had failed to appear for their depositions; and it appears some documents still have not been produced. This state of affairs does not, to this court, constitute substantial compliance.

■ Defendant ASA also appeals the default imposed upon it, arguing that any misconduct attributed to it was conducted only by the individual defendants. ASA is a partnership composed of David B. Johnston, Inc. and Ram, Ltd. Individual Johnston acted as the representative for the corporation that bore his name and also, apparently, for Ram, Ltd. Thus, John-

ston's failure to attend scheduled depositions was ASA's failure as well. Moreover, some of the discovery violations were committed by ASA as an entity. The imposition of default against ASA was not in error.

■ Finally, the appellants take issue on appeal with the amount of the damages. Twenty-five million dollars is undoubtedly a large sum. The district court record, however, contains no basis for the appellants' challenge to that amount. Following the district court's approval of the magistrate's order imposing sanctions, both sides consented to the magistrate entering final judgment including damages. Plaintiffs' counsel prepared an order, supported by the counsel's declaration. The order listed each claim with the amount of damages suffered by the plaintiffs. The order was served upon the defendants, and they filed no opposition to it. A properly noticed hearing in accordance with Federal Rule of Civil Procedure 55(b)(2) was held concerning the issue of damages on October 14, 1988, but defendants did not appear. Magistrate Brennan noted on the record that several calls had been made to defendants' counsel, to no avail. Plaintiffs' counsel noted on the record that he had personally spoken to defense counsel and defense counsel had indicated that no opposition would be filed and no appearance would be made at the hearing. Thereafter, Magistrate Brennan entered judgment based upon the proposed order as supported by the declarations. We have no reason to overturn it. *United States v. DeFrantz,* 708 F.2d 310, 312–13 (7th Cir.1983) (defendant "knew the exact amount the plaintiffs were claiming—yet his counsel never questioned the amount. In these circumstances a hearing on damages was not [even] required."). As we said in *Davis v. Fendler,* 650 F.2d 1154 (9th Cir.1981), "[W]e will not permit a litigant to play cat and mouse with the court, waive his right to appear at the most important hearing in the litigation

and then come forward and claim that the court was in error in proceeding as it did." *Id.* at 1162.[2]

AFFIRMED.

---

**2.** Appellants also argue that the RICO claim against them was inadequately pled. We decline to address this issue because it was not raised below. *See Lake Nacimiento Ranch Co. v. San Luis Obispo City,* 841 F.2d 872, 878 n. 6 (9th Cir.1987), *cert. denied,* 488 U.S. 827, 109 S.Ct. 79, 102 L.Ed.2d 55 (1988); *Rainbow Pioneer No. 44–18–04A v. Hawaii–Nevada Investment,* 711 F.2d 902, 905 (9th Cir.1983).