**HYDE & DRATH, a Professional Corporation, Plaintiff–Appellant,**

v.

**Kenneth R. BAKER, et al.; Olivia Decker; W.C. Baker; Colonial Title Guaranty Company; Michael Salter; Jay Hinrichs; John Murren; Contempo Realty, Defendants–Appellees.**

**TUNGSTEN CONTACT MANUFACTURING CO., et al., Plaintiffs,**

**GW Development Corporation, Ltd., Plaintiff–Appellant,**

v.

**Kenneth R. BAKER, et al., Defendants–Appellees.**

**TUNGSTEN CONTACT MANUFACTURING COMPANY, World Union Corp., Ltd.; Stonehaven Investments, Ltd.; Plaintiffs–Appellants,**

v.

**Kenneth R. BAKER, et al., Defendants–Appellees.**

Nos. 92–15863, 92–15867 and 92–15870.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 4, 1993.

Decided May 20, 1994.

As Amended July 25, 1994.

Thomas F. Hyde and Sharon B. Futerman, Hyde & Drath, San Francisco, CA, for plaintiffs-appellants.

Stephen Kaus, Cooper, White & Cooper, San Francisco, CA, for defendant-appellee Baker.

Gary Nadler, Hirschfield & Nadler, Petaluma, CA, for defendant-appellee Decker.

Anthony Cohen, Clement, Fitzpatrick & Kenworthy, Santa Rosa, CA, for defendants-appellees Colonial and Salter.

Clayton W. Brunsell, Oakland, CA, for defendants-appellees Hinrichs, Murren and Contempo Realty.

Before: BOOCHEVER, THOMPSON, and O'SCANNLAIN, Circuit Judges.

Opinion by Judge O'SCANNLAIN

O'SCANNLAIN, Circuit Judge:

We must decide whether the district court properly dismissed a complaint and imposed sanctions because of repeated failure to attend scheduled depositions.

## I

From 1989 until 1992, plaintiffs-appellants Tungsten Contact Manufacturing Company ("Tungsten"), Grover Investments, Ltd. ("Grover"), World Union Corporation, Ltd. ("World Union"), Stonehaven Investments, Ltd. ("Stonehaven"), and GW Development Corporation, Ltd. ("GW") engaged in litigation with defendants-appellees on claims of fraud and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–68, involving several Northern California real estate deals. Grover, World Union, Stonehaven, and GW are Hong Kong corporations. Tungsten is a New Jersey corporation wholly owned by Mr. L.K. K'ung, a resident of New York. Appellants were represented by attorneys from the law firm of Hyde & Drath.

After having stayed discovery, the district court on October 6, 1989, ordered the depositions of Grover, World Union, Stonehaven, and GW to proceed. On December 1, 1989, the court ordered the depositions to be completed no later than February 10, 1990. Appellees attempted to make arrangements to take appellants' depositions in Hong Kong in compliance with the court order, but World Union and GW proposed dates for depositions after February 10, and Stonehaven offered no date. Appellees found these dates unacceptable because they contravened the court order. No depositions were taken in February 1990.

After the February 10, 1990 deadline had passed, appellees filed a motion to compel discovery based on the December 1, 1989 order. In June 1990, the special master assigned to this case ordered discovery to take place in the Northern District of California, where appellants had filed suit, so that the court could oversee and enforce the deposition schedule.

In March 1990, GW moved to have its claims dismissed, arguing that the cost of pursuing the litigation outweighed the potential recovery. The court denied the motion until GW fully complied with outstanding discovery orders, reasoning that GW's participation was necessary for the preparation of appellees' defense.

In July 1990, appellees again noticed Stonehaven, World Union, Grover, and GW for depositions scheduled from mid-September to October 1990 in San Francisco. Ten days before the first deposition date, the attorneys for these appellants, Hyde & Drath, informed appellees that none of the parties would attend. They reported their clients' view that no representatives of the companies had useful information, so there was no point to the depositions. No depositions occurred in September or October 1990.

In November 1990, appellees filed a motion to enforce the court-ordered depositions. In a January 1991 recommendation, the special master found appellants' responses to the notices of depositions inadequate and ordered that the four corporations make representatives available for depositions in San Francisco. He also recommended that GW and Grover jointly and severally pay $10,000 and that World Union, Grover, and Stonehaven jointly and severally pay $1,500 to appellees for costs and fees incurred in bringing the prior motions to obtain discovery. The special master assessed his fee of $6,600 against Tungsten which was allowed to seek contribution from the other parties. Finally, he warned appellants that if they did not comply with his discovery order, he would recommend dismissal. The court affirmed the special master's recommendations in June 1991.

Appellees again noticed appellants, except for GW and Grover, for depositions in September 1991, this time including Tungsten's representative, K'ung. All depositions were rescheduled to October 1991 by mutual agreement. Then, three days before the first deposition, Hyde & Drath informed appellees that K'ung and the representative of

World Union, Mr. Yih Kee Kon, were too sick to attend, and that Stonehaven had been dissolved. No depositions occurred in October 1991.

In January 1992, the special master recommended that appellants' complaint be dismissed. He found that GW, Grover, and World Union refused to pay the monetary sanctions imposed in his earlier recommendation and that Stonehaven no longer existed. Further, he concluded that K'ung had not submitted affidavits substantiating his claimed illness and so had no excuse for missing the deposition in October 1991. The special master also found that Grover, World Union, and GW had no excuses for missing past depositions. In April 1992, the court adopted this recommendation, dismissed the case, and imposed $17,974 in costs and fees jointly and severally on all appellants, including Hyde & Drath, who now appeal.

## II

■ Appellants contend that the special master erred in ordering the depositions of Grover, Stonehaven, World Union, and GW to take place in San Francisco. Forcing the representatives of these companies to travel so far, appellants argue, was an unjustified imposition.

■ A district court has wide discretion to establish the time and place of depositions. *In re Standard Metals Corp.*, 817 F.2d 625, 628 (10th Cir.1987), *cert. dismissed,* 488 U.S. 881, 109 S.Ct. 201, 102 L.Ed.2d 171 (1988). Here, the special master explained that it was necessary for the Hong Kong depositions to take place in San Francisco so that the court could oversee the proceedings since appellants had disregarded the previous deposition order. He also noted that appellants had done business and filed suit in the Northern District of California and should therefore expect to have to appear there. These facts are sufficient to establish that there was no abuse of discretion in ordering the depositions to occur in San Francisco.

## III

■ Tungsten, Grover, World Union, and Stonehaven argue that the court abused

its discretion in dismissing their complaint. Before a district court dismisses a complaint, it must weigh the five factors prescribed in *Wanderer v. Johnston,* 910 F.2d 652, 656 (9th Cir.1990). Then, the district court must find that a party's behavior in ignoring the depositions demonstrated willfulness, bad faith, or fault. *Fjelstad v. American Honda Motor Co.,* 762 F.2d 1334, 1341 (9th Cir.1985).

### A

*Wanderer* requires the district court to consider: (1) the public's interest in expeditious resolution of litigation, (2) the court's need to manage its dockets, (3) the risk of prejudice to the party seeking sanctions, (4) the public policy favoring disposition of cases on their merits, and (5) the availability of less drastic sanctions. 910 F.2d at 656.

The first two factors weigh in favor of affirming dismissal. The special master and district court found that litigation had been delayed two and one-half years by appellants' procrastination. Appellants claim that their actions have not delayed the litigation of this case, blaming the delay on an appellee who was in prison and on the district court, which stayed discovery proceedings twice. We find no merit in this argument. Even if the discovery process were extended to accommodate the imprisoned codefendant or the district court, appellants contributed significantly to the delay by ignoring the scheduled depositions. As the district court noted, appellants' failure to show up for depositions made the scheduled trial date impossible. Appellants' conduct thus "greatly impeded resolution of the case and prevented the district court from adhering to its trial schedule." *Malone v. United States Postal Serv.,* 833 F.2d 128, 131 (9th Cir.1987), *cert. denied,* 488 U.S. 819, 109 S.Ct. 59, 102 L.Ed.2d 37 (1988).

Under the third *Wanderer* factor, appellants' behavior prejudices appellees if it "impaired [appellees'] ability to go to trial or threatened to interfere with the rightful decision of the case." *United States ex rel. Wiltec Guam, Inc. v. Kahaluu Constr. Co.,* 857 F.2d 600, 604 (9th Cir.1988). Appellees have been completely unable to depose appel-

lants' representatives except for K'ung. Thus, this case is not analogous to those cases involving delay but where depositions eventually occurred. *See, e.g., Kahaluu,* 857 F.2d at 604. Rather, the present case resembles *Adriana International Corp. v. Thoeren,* 913 F.2d 1406, 1412 (9th Cir.1990), *cert. denied,* 498 U.S. 1109, 111 S.Ct. 1019, 112 L.Ed.2d 1100 (1991), where "the repeated failure of [plaintiffs] to appear at scheduled depositions compounded by their continuing refusal to comply with court-ordered production of documents constitute[d] an interference with the rightful decision of the case." In *Adriana,* we affirmed the district court dismissal because of this "outrageous behavior." *Id.* at 1417. Because the Hong Kong corporations continually ignored scheduled depositions, the district court found that appellees faced a fast approaching court date, a lack of crucial information, and an inability to construct a defense. Here, as in *Adriana,* the district court properly found that appellant corporations' failures prejudiced appellees.

The fourth factor—that public policy favors decisions on the merits—usually weighs against dismissal. *Wanderer,* 910 F.2d at 656. However, the district court concluded that a fair trial appeared impossible because of appellants' refusal to cooperate. We agree, and so do not give this factor much weight in this case.

■ Finally, the fifth factor requires the district court to consider alternate, less severe, sanctions before ordering dismissal. To determine whether the district court fulfilled this obligation, the reviewing court examines whether the court (1) explicitly discussed the feasibility of less drastic sanctions and explained why alternative sanctions would be inappropriate, (2) implemented alternative sanctions before ordering dismissal, and (3) warned the party of the possibility of dismissal before actually ordering it. *Adriana,* 913 F.2d at 1412–13. But, "explicit discussion of alternatives is unnecessary if the district court actually tries alternatives before employing the ultimate sanction of dismissal." *Malone,* 833 F.2d at 132.

Here, the district court initially ordered appellants to pay attorneys' fees incurred because of their no-show at scheduled depositions. In ordering these sanctions, the court explicitly stated that it hoped these sanctions would encourage appellants to abide by the schedule of depositions. Further, the court pointedly threatened appellants with harsher sanctions, including dismissal, if they ignored depositions again. Thus, the court both attempted less severe sanctions and issued warnings, to no avail.

■ Appellants argue that the district court failed to consider alternative sanctions because it did not allow appellants' representatives to be deposed over the phone or by written interrogatories. This argument confuses alternative means of conducting depositions with alternative sanctions. The court does not abuse its discretion to sanction when it does not make the deposition as easy as possible for the party being deposed. *See, e.g., Standard Metals Corp.,* 817 F.2d at 628 (district court has wide discretion in setting place and time of deposition).

Since only the fourth factor weighs in favor of appellants in this case, we conclude that the district court did not abuse its discretion in concluding that the balance of factors tipped in favor of dismissal.

**B**

■ Besides weighing the foregoing factors, the district court must also determine that the violations of discovery orders were due to the willfulness, bad faith, or fault of the party. *Wyle v. R.J. Reynolds Indus.,* 709 F.2d 585, 589 (9th Cir.1983). Disobedient conduct not shown to be outside the control of the litigant is sufficient to demonstrate willfulness, bad faith, or fault. *Henry v. Gill Indus.,* 983 F.2d 943, 948 (9th Cir. 1993). Appellants contend that they had valid excuses for not appearing at the depositions. We consider each appellant's contentions in turn.

**1**

Stonehaven's excuse for not appearing is that it had been dissolved and had no current officers and no former officers under its control to send to the depositions. Stonehaven cites *Bon Air Hotel, Inc. v. Time, Inc.,* 376

F.2d 118 (5th Cir.1967), *cert. denied,* 393 U.S. 859, 89 S.Ct. 131, 21 L.Ed.2d 127 (1968), in support of its defense. However, in that case, a specific person was noticed for deposition who was no longer an officer of the corporation. Here, appellees noticed Stonehaven itself for both the October 1990 and 1991 depositions. Throughout this time, Stonehaven was continuing to pursue its suit against appellees. Because it thus must have existed in some form and must have had someone it could designate as its representative, it has no excuse for not appearing.

Stonehaven also relies upon *General Houses v. Marloch Manufacturing Corp.,* 239 F.2d 510 (2d Cir.1956), in which the reviewing court reversed a dismissal order because counsel had sworn that, at the time deposition was noticed, its client "no longer had any officers who knew about the transactions nor any control over the former officers who had such knowledge." *Id.* at 512. This case is distinguishable because although Stonehaven asserted the same excuse, it did not submit any affidavits swearing to this claim. Given the lack of proof corroborating Stonehaven's claim, the court did not abuse its discretion in finding Stonehaven at fault and in imposing sanctions.

### 2

Grover and World Union claim that their representatives did not have information useful to appellees and therefore were justified in not traveling to San Francisco for the depositions. However, it is not for Grover and World Union to decide if appellees could glean useful information from the depositions. The district court had found it worthwhile to order the depositions to proceed, and "[d]isagreement with the court is not an excuse for failing to comply with court orders." *Adriana,* 913 F.2d at 1411.

World Union also argues that its representative, Yih, was too ill to travel to San Francisco for the October 1991 deposition. Yih provided no evidence of his illness and has not offered a sworn affidavit. Thus the court did not abuse its discretion in dismissing Grover's and World Union's complaint.

### 3

GW does not contest the dismissal of the complaint. We affirm the district court's dismissal of its claims.

### 4

Tungsten claims that its representative, K'ung, was very ill and unable to travel from New York to San Francisco for the October 1991 deposition. At an April 1991 status hearing, K'ung's attorney told the court that K'ung was too ill to travel to a deposition. The court expressed disbelief. In January 1992, the special master noted that K'ung's excuse for not appearing at the October deposition was not substantiated and recommended that Tungsten's complaint be dismissed. Before the February 27, 1992 court hearing on the special master dismissal recommendation, K'ung presented doctors' declarations stating that he was ill at the time of the October 1991 deposition, but the court ignored these declarations.

We need not consider whether the district court abused its discretion in failing to consider the doctors' declarations before it dismissed the complaint because there is alternative evidence of K'ung's bad faith regarding the discovery orders.[1] Although the evidence is not conclusive, there is enough in the record for the district court to have properly decided that K'ung influenced, if not controlled, the Hong Kong corporations' wrongful behavior during discovery. The record suggests that K'ung managed the lawsuit for the corporations. First, he acknowledges that he was the corporations' representative in the United States for their real estate investments. Second, K'ung initiated the suit on behalf of the corporations without their knowledge or consent. During a deposition, K'ung stated that he had not informed

---

**1.** Tungsten argues that K'ung's activities on behalf of the Hong Kong corporations should not be attributed to Tungsten. However, the record shows that Tungsten existed solely to facilitate K'ung's real estate investments; the corporation did not produce or provide any goods or services. Part of K'ung's investment activity involved pursuing development opportunities for investors in Hong Kong. Because Tungsten existed only to enable K'ung's real estate deals, it is reasonable to attribute wrongdoings in these deals to the corporation.

the corporations when he filed the complaint in their names. And, at the time of the deposition, he had not yet told the corporations that he expected them to pay their share of the legal fees. Third, discovery requests were channeled through K'ung to the Hong Kong corporations. For instance, when appellees asked the corporations to respond to interrogatories, K'ung obtained the necessary information from unnamed sources in Hong Kong and verified the answers to the interrogatories. Although K'ung later stated that he had not read through the answers and was ignorant of the information before swearing that the responses were accurate, the district court had sufficient evidence of K'ung's control of the lawsuit to have inferred that K'ung also influenced the corporations' failure to appear at depositions.[2]

█ We cannot overturn a dismissal of a complaint unless we have a definite and firm conviction that the district court committed a clear error of judgment in the conclusion it reached upon weighing the relevant factors. *Fjelstad,* 762 F.2d at 1337. Here, the evidence of K'ung's control over the suit's initiation and discovery proceedings is sufficient to attribute responsibility for the Hong Kong corporations' failure to attend the depositions.

Therefore, we conclude that the district court did not abuse its discretion in dismissing Tungsten's complaint.

## IV

Appellant corporations also contest the district court's award of attorneys' fees and costs against them pursuant to Federal Rule of Civil Procedure 37.

### A

█ GW maintains that the court should not have imposed a $10,000 sanction for failing to attend the October 1990 deposition because it had tried to dismiss its complaint the previous March and thus had been an unwilling plaintiff. We know of no authority

that permits a party to ignore a court-ordered deposition simply because a district court has denied its motion to dismiss its complaint. Further, the denial of GW's motion to dismiss was not improper.

█ The decision to grant a voluntary dismissal is in the discretion of the district court. *Hamilton v. Firestone Tire & Rubber Co.,* 679 F.2d 143, 145 (9th Cir.1982); *Sam v. Beech Aircraft Corp.,* 625 F.2d 273, 277 (9th Cir.1980). In making this decision, the court must consider whether the defendant will suffer some plain legal prejudice as a result of the dismissal. *Hamilton,* 679 F.2d at 145; *see also Paulucci v. City of Duluth,* 826 F.2d 780, 782 (8th Cir.1987) (must "prevent voluntary dismissals which unfairly affect the other side"). The inconvenience of defending another lawsuit or the fact that the defendant has already begun trial preparations does not constitute prejudice. *Hamilton,* 679 F.2d at 145.

Here, appellees argued that because GW was inextricably entangled in the complex fraud claims, it was necessary for it to remain a party. Given the complexity of the suit and the fact that appellees had not yet deposed GW, the court had reason to believe that without GW's continued involvement, appellees would be unable to untangle appellants' claims and to defend themselves adequately. The record indicated that GW had loaned Tungsten more than five million dollars for the purchase of one of the properties at issue in appellants' suit. The court thus reasonably concluded that GW's continued presence was necessary to explain its role in the allegedly fraudulent deal.

█ GW also argues that the court abused its discretion in imposing the $10,000 sanction, under Federal Rule of Civil Procedure 37, for appellees' costs incurred in filing motions in February 1990 and November 1990 to enforce the court's discovery orders. GW contends that the fees for preparing the February 1990 motion were unrelated to its failure to appear at the October 1990 deposition.

---

2. K'ung's disavowal of any knowledge about the substance of the interrogatory answers is indicative of appellant corporations' inconsistent testimony and contradictory statements throughout the record.

We reject this argument. The court in *Liew v. Breen,* 640 F.2d 1046, 1051 (9th Cir.1981), noted that "Rule 37(b)(2) provides for the award of reasonable expenses and attorney's fees 'caused by the failure' to obey a court order to provide or permit discovery. This provision must be distinguished from Rule 37(a), which provides for the award of expenses resulting from efforts to secure an order compelling discovery." *See also Toth v. Trans World Airlines, Inc.,* 862 F.2d 1381, 1386 n. 2 (9th Cir.1988). Here, the court did not indicate under which rule it was imposing the sanction. Both rules, however, permit an award for the expenses incurred in preparing the February 1990 motion. Under Rule 37(a), appellees expended resources to secure the June 1990 special master order compelling depositions in San Francisco. And, under Rule 37(b)(2), the February 1990 motion was "caused by the failure" of GW to schedule depositions before February 10, 1990, in accordance with the December 1, 1989 order.[3] Because GW had disobeyed this order, appellees had to seek further court orders compelling depositions. Thus, the $10,000 sanction against GW was proper.

Finally, GW asserts that since appellees never noticed it for depositions in October 1991, it should not be sanctioned with the other appellants for disregarding this set of depositions. Appellees agree that the district court erred in including GW in its April 1992 order imposing monetary sanctions against all appellants. We thus reverse the sanction imposed in that order against GW.

### B

Tungsten argues that the January 1991 special master request and the June 1991 court order holding Tungsten liable for fees of $6,600 was improper because Tungsten had not violated any court orders at that time.

Rule 37 authorizes the court to impose sanctions on a party only when it "fails to obey an order to provide or permit discovery." Fed.R.Civ.P. 37(b)(2). As of June 1991, Tungsten had not disregarded court-ordered deposition dates. To the contrary, the special master noted that of all appellants, only Tungsten had not "approached this litigation and the rulings of this Court with disdain." Consequently, because Tungsten had not violated any discovery order, the court abused its discretion in ordering Tungsten to pay $6,600 in sanctions.

### C

■■■ Tungsten, Grover, Stonehaven, and World Union assert that the district court improperly assessed attorneys' fees and costs against them when it dismissed the case in its April 1992 order.[4] The court held these parties jointly and severally liable for $17,974 in fees and costs incurred by appellees in the previous year due to appellants' violations of court discovery orders.

The court found that each appellant had disregarded discovery orders. Further, the record suggests that the corporations were not independent entities. The special master concluded that "these alleged foreign corporate entities either do not exist or are mere paper shells which exist for ulterior reasons and for the benefit of persons who refuse to identify themselves or to be questioned under oath." In addition, three men—L.S. K'ung, Lytton Hsu, the head of Grover, and Alfred Wang, the president of World Union—appear to be the primary decision-makers behind the corporations' business deals in the United States. For example, K'ung explained that he scouted for investment opportunities in the United States and Hsu worked the Hong Kong end of the deals. And, in interrogatory answers, each Hong Kong company indicated that K'ung and Wang were associated with the corporation as friends and consultants.

Some of the corporations also overlapped in their financing and management. For

---

3. Although GW does not contest the award of fees or costs incurred in preparing the November 1990 motion, this award is also appropriate under Rule 37(b)(2).

4. Because appellees agree that GW should not have been sanctioned in the April 1992 court order and because we reverse that sanction, we do not reach GW's claim that it should not be held jointly and severally liable with the other corporations.

instance, GW loaned Tungsten more than five million dollars to buy one of the properties at issue in the underlying dispute. Further, one owner of GW was also an officer in Grover. Each of the appellant corporations is very small and appears to be owned and directed by three to five people. At least Grover and Tungsten exist only to facilitate investment plans of their owners. In such a close environment, it is not unreasonable to infer that men in charge of the corporations worked together to further their interests.

Finally, the owners and officers listed in the corporations' interrogatory answers do not appear to be the true parties in control of the companies. Two of the named directors of Grover testified in a related criminal proceeding that they held shares in the company for an unnamed party and that they never attended board meetings. They stated that as directors they signed papers received from an unknown source. Also, although K'ung swore to the accuracy of the corporations' interrogatory answers, he could not name at his deposition the owners or managers of the Hong Kong corporations. K'ung's inability to remember the names of the people for whom he testified he made the real estate deals and for whom he was pursuing the lawsuit, suggests that he, Hsu, and Wang may have had more control over the corporations than they admitted.

Because the evidence supports the district court's decision on joint and several liability, we conclude that its sanctions were not abusive.

### V

Hyde & Drath, counsel to appellants, argues that the district court erred in holding it jointly and severally liable under Federal Rule of Civil Procedure 37(d) for sanctions imposed on its clients. In support of its claim, the law firm asserts that the court conceded that Hyde & Drath did not act in bad faith in its representation and was substantially justified in defending appellants from appellees' motion to dismiss.

Rule 37(d) authorizes the district court to require an attorney "to pay the reasonable expenses, including attorneys' fees, caused

by the failure" of its client to appear at a deposition, "unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust." Under Rule 37(b)(2), which has the same language as Rule 37(d), the burden of showing substantial justification and special circumstances is on the party being sanctioned. *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 784 (9th Cir. 1983). We thus apply the same burden of proof for Rule 37(d).

 The fact that there is no evidence that Hyde & Drath acted in bad faith does not immunize it from sanctions. We have not required a finding of bad faith on the part of the attorney before imposing sanctions under Rule 37. For instance, Rule 37(b)(2) does not require the attorney to have advised the client to ignore discovery orders before incurring sanctions. *See, e.g., Toth*, 862 F.2d at 1381 (affirming attorney sanction without mention of attorney bad faith). In addition, we find no Ninth Circuit cases discussing a bad faith requirement under Rule 37(d). While a finding of bad faith is not a requirement for imposing sanctions, good or bad faith may be a consideration in determining whether imposition of sanctions would be unjust.

 Hyde & Drath contends that it was substantially justified in defending appellants against the dismissal motion. But the argument it must make under Rule 37 is that the failure of its clients to attend depositions was substantially justified, not that its defense of its clients was substantially justified. We have stated that "a good faith dispute concerning a discovery question might, in the proper case, constitute 'substantial justification'" to reverse a Rule 37(b)(2) sanction. *Liew*, 640 F.2d at 1050.

We cannot conclude that each of the appellant corporations was substantially justified in failing to attend the depositions. Only K'ung's failure to appear was substantially justified. Although we have declined to reach the merits of the argument that K'ung was excused from attending the depositions for health reasons, we do decide that K'ung had, at the least, a good faith dispute concerning the question of whether he was obli-

gated to appear in light of his serious illness. He was therefore substantially justified in failing to appear at the deposition. *Id.* (In fact he subsequently died of brain cancer). However, as discussed above, none of the other corporations have a good faith dispute concerning their failures to appear. Except for K'ung, Hyde & Drath has failed to show that its clients were substantially justified in violating the court's discovery orders.

■ Rule 37(d) also provides that even if there is no substantial justification, sanctions should not be imposed if "other circumstances" make such sanctions "unjust." This provision requires us to consider the attorneys' behavior, rather than the client's actions. *See Reygo Pac. Corp. v. Johnston Pump Co.*, 680 F.2d 647, 649 (9th Cir.1982) (abuse of discretion to sanction attorney where one action was substantially justified and the record "disclose[d] no other conduct on the part of the attorney in the course of discovery that seem[ed] objectionable").

■ Throughout most of the discovery process, the special master noted that Hyde & Drath was providing appropriate legal counsel. He stated in his January 1991 recommendation that "[p]laintiffs' counsel are caught between the mandates of this court and uncooperative, foreign clients and that it is not at all clear that the problems described above are the product of willful behavior on the part of Plaintiffs' counsel." Not until his January 1992 recommendation did the special master find Hyde & Drath's behavior sanctionable based on counsel's rehashing legal arguments already rejected by the district court, making no effort to secure proof of K'ung's and Yih's claims of illness, and wasting time by persistently asserting its clients' right to ignore court orders. There is evidence in the record to support the master's conclusion.

In April 1992, the district court adopted the January 1992 recommendation that Hyde & Drath be held jointly and severally liable for the sanctions imposed on the corporations for their 1991 discovery violations. Included in this award were appellees' costs and expenses relating to the appellants' motion for reconsideration of the special master's January 1991 recommendation.

Holding Hyde & Drath liable for the costs and expenses related to this motion was unjust and an abuse of discretion since the special master and district court did not find Hyde & Drath's pre-January 1991 behavior objectionable. The appellants' motion for reconsideration resulted from their failure to attend depositions in 1990. The special master's January 1991 recommendation found that Hyde & Drath was acting properly in 1990. Therefore, there is no basis for holding Hyde & Drath liable for sanctions resulting from the corporations' 1990 actions. We reverse the district court's order making Hyde & Drath liable for the appellees' costs and expenses related to the motion for reconsideration of the special master's 1991 recommendation.

■ However, the district court did not abuse its discretion in holding Hyde & Drath liable for sanctions imposed on the corporations for costs and expenses arising from their violations of the discovery orders scheduled in 1991. Because there is evidence of Hyde & Drath's improper behavior in 1991, the imposition of these sanctions is not unjust. And, because none of these corporations, with the one exception of K'ung as an individual, has shown a good faith dispute concerning its failure to appear at the 1991 depositions, Hyde & Drath's clients were not substantially justified in violating the discovery orders.

Therefore, we affirm the district court's decision to hold Hyde & Drath jointly and severally liable for the costs and expenses resulting from the failure of the parties to attend the 1991 depositions. Since K'ung was substantially justified in failing to attend, Hyde & Drath is not liable for costs and expenses resulting from his absence.

VI

Appellees ask for attorneys' fees and costs on appeal. Under Federal Rule of Appellate Procedure 38, we have the discretion to award attorneys' fees and costs as a sanction for bringing a frivolous appeal. An appeal is frivolous if the result is obvious or the appel-

lants' arguments are wholly without merit. *Adriana*, 913 F.2d at 1417.

The appeal is not frivolous because the results are not obvious. Although we do not need to reach the merits of Tungsten's argument that the district court abused its discretion in failing to consider the affidavit on K'ung's medical condition, the claim is not obviously meritless. Also, while there is evidence supporting the imposition of joint and several liability for sanctions on appellants, the evidence is not overwhelming. Therefore, we decline appellees' request to impose Rule 38 sanctions.

## VII

We affirm the dismissal of the complaint because appellants were at fault in failing to attend the scheduled depositions. We affirm the sanctions on appellants, except for the April 1992 sanctions against GW and the June 1991 special master fees of $6,600 imposed on Tungsten, which we reverse. We reverse in part the imposition of sanctions on Hyde & Drath.

AFFIRMED IN PART and REVERSED IN PART; each party to bear its own costs.