THE STARS' DESERT INN HOTEL
& COUNTRY CLUB, INC.,
Plaintiff–Appellee,

v.

Richard HWANG, Defendant–Appellant.

No. 95–15915.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 4, 1996.

Decided Jan. 27, 1997.

Scott Warmuth, Monterey Park, California, for defendant-appellant.

David N. Frederick, Lionel Sawyer & Collins, Las Vegas, Nevada, for plaintiff-appellee.

Before SKOPIL and FLETCHER, Circuit Judges, and JOHN S. RHOADES, District Judge.*

SKOPIL, Circuit Judge:

Richard Hwang appeals the district court's entry of a default judgment in favor of The Stars' Desert Inn Hotel & Country Club, Inc. ("Stars") as a sanction for failing to comply with a court order to submit to deposition and failing to pay court-ordered monetary sanctions. Hwang contends that the district court did not have jurisdiction. Alternatively, he argues that the court abused its discretion in entering a default judgment. We affirm.

## I.

On March 16, 1994, Stars, a Las Vegas casino, filed this diversity action against Richard Hwang, a citizen of Taiwan, in an attempt to collect a gambling debt. The complaint alleged that Hwang owed Stars $1,885,000 pursuant to a two million dollar line of credit with Stars. Based on information acquired through independent investigation, Stars determined that Hwang resided in a guarded and gated community in Beverly Hills. Stars employed a process server to attempt personal service upon Hwang. On six separate occasions, however, the process server was denied entrance by the gate guard. On the last attempt, after the gate guard confirmed that Hwang did indeed reside at that address, the process server left the summons and complaint with the gate guard.

Hwang filed a motion to quash service asserting that Stars failed to serve him properly pursuant to Fed.R.Civ.P. 4. Hwang claimed that, as a citizen of Taiwan, he could only be served in accordance with Rule 4(f) governing service upon individuals in a foreign country. Further, Hwang argued that even if Rule 4(f) did not apply, Stars failed to serve him properly under Rule 4(e) governing service within the United States because the Beverly Hills residence was not his dwelling house or usual place of abode. The district court rejected both arguments and denied Hwang's motion to quash. Shortly thereafter, Hwang filed his answer to the complaint.

Stars' discovery efforts began in August 1994. Stars sent Hwang a notice stating that his deposition would be taken in Las Vegas on September 23, 1994. One week before the scheduled deposition, Hwang's counsel notified Stars that Hwang would be in the Orient on September 23, and would therefore be unable to appear at the deposition. Counsel stated that he expected Hwang to return to California in early October, intimating that Hwang would be available for deposition at that time. Thereafter, communication between the parties broke down and they failed to agree on a date for the rescheduled deposition. Stars nevertheless proceeded with the deposition on September 23. Hwang did not appear. Stars promptly filed a motion requesting that the court strike Hwang's answer and enter a default judgment against him as a sanction for failing to appear at the deposition.

The district court found that "both parties were at least partially responsible" for failing to find a mutually agreeable date for the rescheduled deposition, and thus denied Stars' motion for sanctions. In an attempt to expedite Hwang's deposition, the court or-

* The Honorable John S. Rhoades, United States District Judge for the Southern District of California, sitting by designation.

dered the parties to reach an agreement on a deposition date prior to November 29. Further, the court warned Hwang that

any failure by Defendant to make himself available for deposition within the time period set forth by the court (or any authorized extension thereof), or any failure by Defendant to appear for his rescheduled deposition, will result in the granting of sanctions, which may include the granting of a default judgment in Plaintiff's favor.

On October 31, Stars asked Hwang to provide at least two dates prior to November 29, on which his deposition could be taken in Las Vegas. Hwang did not respond to this request. Stars thereafter set a deposition date for November 23 and sent notice to Hwang. Two days before the deposition was to occur, Hwang's counsel informed Stars that Hwang was "in the Orient attending to important business matters," and would not be appearing at the rescheduled deposition. As an alternative, counsel offered to make Hwang available for deposition in China at any time on or before the November 29 deadline set by the court. Stars balked at this proposal and promptly filed a second motion for sanctions with the court.

After argument from counsel on the motion, a magistrate judge directed the parties to brief the issue of where Hwang's deposition should be taken. After briefing was completed, a second hearing was held in which Hwang's counsel candidly stated that Hwang would not return to Nevada for purposes of deposition, and expressed exasperation at his client's unwillingness to do so. Counsel acknowledged his client's "lack of attentiveness" with respect to the litigation, and indicated that it appeared that Hwang did not intend to cooperate with his own counsel on the matter, much less opposing counsel.

Despite this disclosure from Hwang's counsel, the magistrate judge declined to grant Stars' request for a default judgment. Instead, the court imposed sanctions of $2,100 against Hwang, and ordered him to either appear in Las Vegas for his deposition on or before February 10, 1995 or prepay Stars' expenses to have his deposition taken in Taiwan by that date. Further, the magis-trate judge instructed counsel for Hwang "to convey to his client that obviously if he fails to appear now, the options available to the Court and to the parties are really going to be very narrow and will almost require a default in the case."

Immediately after this order was entered, Stars informed Hwang that the estimated expense of taking the deposition in Taiwan would be $20,000 to $40,000. More than three weeks later, and eleven days before the February 10 deadline imposed by the court, Hwang informed Stars that he would neither appear for deposition in Las Vegas nor prepay the estimated expenses to have his deposition taken in Taiwan. Thus, February 10 passed without Hwang's deposition being taken. Thereafter, Stars filed a third motion for sanctions pursuant to Fed.R.Civ.P. 37. In his opposition to the motion, Hwang contended that he did not willfully disobey the court's order, but rather merely refused to prepay the "excessive" estimate of expenses for taking his deposition in Taiwan.

The district court issued an order striking Hwang's answer and granting a default judgment. The court gave three reasons for imposing this sanction. First, the court held that

it is not Plaintiff's responsibility to justify the estimate of expenses proposed. The court ordered *Defendant* to make himself available for deposition by a certain date. He was given options which were designed to ensure that the deposition would be taken and that the inconvenience of any decision to hold the deposition in Taiwan would be borne by him. Therefore, if Defendant believed that the expense estimate proposed by counsel for Plaintiff was unreasonable, it was incumbent upon him to suggest or provide a more mutually acceptable arrangement in order to comply with the court's Order and hold the deposition before the scheduled date.

The court found that counsel for Hwang failed to make any such suggestion or provision. Second, the court ruled that if Hwang found the expense estimate excessive, he should have sought a protective order. Finally, the court found that Hwang had not paid the $2,100 sanction imposed by the court

after his second failure to appear for deposition. On the basis of this combination of factors, the court found that Hwang was "continuing to engage in dilatory tactics in violation of this court's previous admonitions," and accordingly granted Stars' request for a default judgment.

## II.

■ Hwang contends that the district court did not have jurisdiction because he was not properly served. Specifically, he argues that as a citizen of Taiwan, service on him must comply with Fed.R.Civ.P. 4(f), governing service on individuals not within a judicial district of the United States. We disagree. The plain language of Rule 4(f) indicates that application of the rule is not triggered by the citizenship of the individual being served but rather the place in which service is effected.

Hwang alternatively contends that he was not served properly under Fed.R.Civ.P. 4(e)(2) because service was not effected at his "dwelling house or usual place of abode." The district court found that there was convincing evidence that Hwang lived at the residence where service was effected, and that service was therefore proper under Rule 4(e)(2). After reviewing the record, we agree that Hwang was effectively served pursuant to Rule 4(e)(2). *See Gerritsen v. Consulado General De Mexico*, 989 F.2d 340, 344 (9th Cir.) (plaintiff may "serve the defendants either personally or by leaving a copy of the summons and complaint at their usual place of abode"), *cert. denied*, 510 U.S. 828, 114 S.Ct. 95, 126 L.Ed.2d 62 (1993); *National Dev. Co. v. Triad Holding Corp.*, 930 F.2d 253, 257 (2d Cir.) (person can have more than one dwelling house or usual place of abode for purposes of rule), *cert. denied*, 502 U.S. 968, 112 S.Ct. 440, 116 L.Ed.2d 459 (1991).

## III.

■ Hwang argues that the district court erred in imposing a default judgment based on his failure to obey a court order to submit to deposition and his failure to pay court-ordered sanctions. The court acted pursuant to Fed.R.Civ.P. 37 which permits judgment by default as a sanction for failing to submit to deposition or otherwise failing to comply with a discovery order. Our review is limited to determining whether the district court abused its discretion in imposing this sanction. *Dahl v. City of Huntington Beach*, 84 F.3d 363, 367 (9th Cir.1996).

■ Before a default judgment can be entered against a defendant for violating an order to appear for deposition, the district court must consider "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Hyde & Drath v. Baker*, 24 F.3d 1162, 1166 (9th Cir.1994) (citing *Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir.1990)). "The first two of these factors favor the imposition of sanctions in most cases, while the fourth cuts against a default or dismissal sanction. Thus the key factors are prejudice and availability of lesser sanctions." *Wanderer*, 910 F.2d at 656.

■ To determine whether a district court properly considered the availability of lesser sanctions, we must examine whether the court (1) discussed explicitly the feasibility of less drastic sanctions and explained why alternative sanctions would be inappropriate, (2) implemented alternative sanctions before ordering default, and (3) warned the party of the possibility of default before actually ordering it. *Hyde & Drath*, 24 F.3d at 1167. We conclude that the district court adequately considered the availability of lesser sanctions here.

■ The court declined to impose sanctions after Hwang's initial failure to appear for deposition. The court, however, explicitly warned that if Hwang failed to make himself available for a rescheduled deposition, sanctions would be forthcoming, "which may include the granting of a default judgment." After Hwang missed his second deposition date, the court issued an order setting a third and final deposition deadline, imposed a monetary sanction and directed counsel to warn Hwang that his continued intransigence would most likely result in the harsh sanction

of default. It was not until Hwang failed to pay the fine, and the final deposition date passed, that the court decided to enter a default judgment. In so doing, the court commented that "Defendant has been warned on numerous occasions and less drastic sanctions have been administered by the court. However, these warnings have gone unheeded and the attempt at less drastic sanctions has apparently ben [sic] ignored." On these facts, Hwang should not have been surprised at the sanction of default for his failure to submit to deposition by the deadline imposed by the magistrate judge. *See Adriana Int'l Corp. v. Thoeren,* 913 F.2d 1406, 1413 (9th Cir.1990), *cert. denied,* 498 U.S. 1109, 111 S.Ct. 1019, 112 L.Ed.2d 1100 (1991).

We also have no difficulty concluding that Stars was prejudiced by Hwang's reluctance to be deposed. *See Commodity Futures Trading Comm'n v. Noble Metals Int'l, Inc.,* 67 F.3d 766, 771 (9th Cir.1995) (repeated failure of corporation to designate a representative to testify at a discovery deposition "severely prejudiced" government's ability to make its case), *cert. denied,* —— U.S. ——, 117 S.Ct. 64, 136 L.Ed.2d 26 (1996); *Hyde & Drath,* 24 F.3d at 1166–67 (failure to appear at depositions prejudiced opposing party); *Adriana,* 913 F.2d at 1412 (repeated failure of party to appear at scheduled depositions "interfere[d] with the rightful decision of the case"). Hwang's answer to Stars' complaint raised several affirmative defenses. We agree with Stars that these defenses could not properly be addressed without the benefit of Hwang's deposition testimony.

■ Before upholding the harsh sanction of a default judgment, we must also review the district court's finding that a party's repeated failure to appear for deposition is due to the willfulness, bad faith or fault of the party. *Hyde & Drath,* 24 F.3d at 1167. We agree with the district court that Hwang's conduct constituted a willful violation of the magistrate judge's order to submit to deposition by February 10. Disobedient conduct not shown to be outside the control of the litigant is sufficient to demonstrate willfulness, bad faith or fault warranting default. *Id.* Hwang has not demonstrat-

ed that his failure to pay sanctions or to comply with the magistrate judge's order to submit to deposition by February 10 was beyond his control. After the magistrate judge issued that order, Stars gave Hwang its estimate of what it would cost to take his deposition in Taiwan. Hwang objected to this estimate, but did not propose an alternative expense plan, make any good faith attempt to reach a mutually agreeable figure, or seek a protective order prior to the expiration of the deposition deadline. His failure to do so, combined with his failure to pay the fine, constituted a willful violation of the magistrate judge's order. *See Commodity Futures,* 67 F.3d at 771. Certainly, it cannot be said that his failure to appear was beyond his control.

Because the record demonstrates that the district court adequately considered the availability of lesser sanctions, that Stars was prejudiced by Hwang's failure to submit to deposition, and that Hwang's conduct was willful, we conclude that the sanction imposed by the district court was within the range of acceptable options. The district court did not abuse its discretion in entering the default judgment against Hwang.

**AFFIRMED.**

FLETCHER, Circuit Judge, dissenting:

I respectfully dissent. The majority affirms a default judgment of 1.8 million dollars against a defendant for failure to appear at a deposition that was never noticed. Fed. R.Civ.P. 30, requires that a party "desiring to take the deposition of any person upon oral examination shall give reasonable notice in writing to every other party to the action." That did not happen here.

The court on January 5, 1995 set a February 10, 1995 deadline to complete the deposition of the defendant. It ordered the defendant to appear "in either Las Vegas, Nevada or in Taiwan. If Defendant declines to appear for deposition in Las Vegas, then the Defendant shall prepay all expenses for Plaintiff's counsel to travel to Taiwan to take Defendant's deposition." This order was the result of Hwang's second failure to appear for a noticed deposition. The order also

included a $2,100 sanction against Hwang to cover plaintiff's attorneys' fees.

On January 24, 1995, plaintiff's counsel notified defendant's counsel of its intent to take defendant's deposition. Previously he had estimated costs of the Taiwan deposition to be between $20,000 and $40,000. In the letter he asked "which option defendant has selected." On January 30, 1995, defendant's counsel left a telephone message, confirmed by letter on February 3, 1995, that "Mr. Hwang does not intend to appear for deposition in Las Vegas and will not prepay $20,000 to $40,000, which we received as an estimate for plaintiff's expenses to have Mr. Hwang's deposition in China." No further communication between the parties occurred and the deadline passed.

On this record, the district court awarded Stars' a $1,885,000 default judgment, plus prejudgment interest, costs, attorney's fees and post-judgment interest. This was an abuse of discretion.

Hwang argues that Stars' estimate of $20,000 to $40,000 in expenses to take a deposition in Taiwan was unreasonable and contends that airfares and hotel rates, in early 1995, indicate a cost closer to $2,000 for one person to fly to Taiwan, spend two nights in a hotel, and record the deposition by tape recorder, as provided by Fed.R.Civ.P. Rule 30(b)(2).

The district court relied on Fed.R.Civ.P. 37(d) for the proposition that even if the estimate was unreasonable, it was Hwang's responsibility to file for a protective order in order to be protected from the consequences of his "failure to act." Rule 37(d), however, states that a judge may make orders in regard to the failure to act "[i]f a party ... fails (1) to appear before the officer who is to take the deposition, *after being served with a proper notice.*" (emphasis added).

Hwang, however, was not served with any notice, let alone a "proper notice". Further, while Hwang did not offer a reasonable estimate of the costs, neither did Stars'. The breakdown of communication on both sides after Hwang's February 3, 1995 letter should not result in a default judgment against Hwang; it appears clear that Stars' $20,000–$40,000 estimate was excessive. The district court places the responsibility for a reasonable estimate on Hwang, yet in the telephonic conference call concerning plaintiff's second motion for sanctions, the court specifically decided not to specify a dollar amount associated with the prepaid expenses in the order, but instead decided to "let you two work that out." That implies a mutual responsibility to arrive at an agreed upon figure. Both parties are at fault in failing to negotiate a fair figure.

The court also uses Hwang's failure to pay the $2,100 sanction as justification for the default. As the majority correctly notes, *Wanderer v. Johnston,* 910 F.2d 652, 656 (9th Cir.1990) lays out a five-factor test that a district court must consider before entering a default judgment against a defendant for failure to comply adequately with discovery obligations. The fifth factor, the availability of less drastic sanctions, is dispositive here. It was clearly Hwang's responsibility to pay the sanction. However, I can think of many less drastic sanctions than a 1.8 million dollar judgment, plus costs and interest, for the failure to pay $2,100.

On this record, neither party is blameless. Stars' did not notice a deposition, supply a good-faith estimate of costs, or make any effort after February 3, 1995 to negotiate a satisfactory time, place, or manner of discovery in order to meet the court's February 10 deadline. Further, it failed to allege how not deposing Hwang would prejudice its case: it offers no evidence of information that it expected to adduce at the deposition or why it could not simply proceed to trial. The action was for a gambling debt incurred by Hwang at Stars' casino.

Default and dismissal are sanctions which are authorized only in "extreme circumstances." *Fjelstad v. American Honda Motor Co.,* Inc., 762 F.2d 1334, 1338 (9th Cir. 1985). I find such circumstances absent here. Both parties contributed to the failure to meet the court's February 10 deadline. Accordingly, I dissent.