

**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>FRANK JOSEPH JAKUBAITIS,<br>Debtor. | BAP No. CC-20-1009-GFS<br><br>Bk. No. 8:13-bk-10223-TA |
| FRANK JOPEPH JAKUBAITIS,<br>Appellant,<br>v.<br>JEFFREY IAN GOLDEN; RICHARD A.<br>MARSHACK; CARLOS PADILLA, III,<br>Appellees. | Adv. No. 8:15-ap-01020-TA<br><br>**MEMORANDUM**[1] |

Appeal from the United States Bankruptcy Court
for the Central District of California
Theodor C. Albert, Bankruptcy Judge, Presiding

Before: GAN, FARIS, and SPRAKER, Bankruptcy Judges

## INTRODUCTION

Chapter 7[2] debtor Frank Jakubaitis ("Debtor") appeals the judgment

revoking his discharge under § 727(d). The bankruptcy court struck

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, see Fed. R. App. P. 32.1, it has no precedential value, see 9th Cir. BAP Rule 8024-1.

[2] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

Debtor's answer to the complaint as a sanction for his failure to respond to the court's order to show cause (the "Contempt OSC"), which required Debtor to address his compliance with prior orders compelling discovery and the status of prior monetary sanctions. After a prove-up hearing, the bankruptcy court entered default judgment revoking Debtor's discharge but dismissed the second claim asserted against Debtor and Mrs. Jakubaitis for turnover of assets under § 542 (the "Turnover Claim").

Debtor then filed a motion under Civil Rule 60(b), made applicable by Rule 9024, seeking to vacate the judgment. The court denied the motion and Debtor appealed.

Debtor has not demonstrated an abuse of discretion by the bankruptcy court. We AFFIRM.

## FACTS[3]

Debtor filed his chapter 7 petition in January 2013. His discharge was entered, and his case was closed in January 2014. In 2015, the bankruptcy court reopened the case to allow creditor Carlos Padilla, III to file an adversary complaint, and the court reappointed Jeffrey Golden as trustee. Mr. Padilla, Mr. Golden, and Richard Marshack, the trustee in Mrs.

---

[3] We exercise our discretion to take judicial notice of documents electronically filed in Debtor's main case and the adversary proceeding. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003). Debtor asks us to strike portions of Plaintiffs' excerpts of record pertaining to Debtor's deposition because those documents are part of the record in a separate appeal before the Ninth Circuit. We find no merit in Debtor's argument and deny his motion to strike.

Jakubaitis's chapter 7 case (together "Plaintiffs"), filed a complaint against Debtor and Mrs. Jakubaitis seeking revocation of Debtor's discharge and turnover of various assets. Plaintiffs then moved to substantively consolidate Debtor's case with Mrs. Jakubaitis's chapter 7 case,[4] but the court denied the motion.

Plaintiffs alleged that Debtor failed to disclose his ownership of various assets and intentionally underreported his income to qualify for chapter 7 relief.

## A. Discovery Disputes And The Court's Prior Orders

In August 2016, Plaintiffs filed a motion to compel Debtor to respond to their request for production of documents pursuant to Civil Rule 37(a), made applicable by Rule 7037. They sought bank records, tax returns, and financial documents from Debtor and his various entities, including WeCosign, Inc. After a hearing, the court ordered Debtor to produce the documents within 30 days but declined to impose monetary sanctions at that time.

In January 2017, Debtor failed to appear for his deposition. The bankruptcy court granted Plaintiffs' motion to compel Debtor's attendance but continued the hearing on the issue of monetary sanctions to permit Debtor to file a protective order. Debtor filed a motion for a protective

---

[4] Mrs. Jakubaitis filed a separate chapter 7 case in 2013 and received a discharge in 2014. After the bankruptcy court denied substantive consolidation, Mr. Marshack filed a separate adversary complaint in Mrs. Jakubaitis's bankruptcy case against her and Debtor, seeking revocation of discharge and turnover of assets.

order, asserting in part that the effects of prescription medication made it impossible for him to give meaningful and accurate deposition testimony. At the hearing in May 2017, the court denied Debtor's motion for a protective order and entered monetary sanctions against Debtor in the amount of $3,000. The court stated that if Debtor failed to comply with the order compelling his deposition, "more severe sanctions, including striking the answer, will be considered."

In October 2017, Plaintiffs filed a second motion to compel and asserted that Debtor appeared for his deposition but refused to answer several questions, including questions about his mental capacity, which Plaintiffs argued was pertinent to their case. Plaintiffs sought additional sanctions of $4,830.

The bankruptcy court continued the hearing to January 2018 to allow Debtor to file a second motion for protective order to be heard "well ahead of the continued hearing." Debtor filed his second motion for a protective order one day before the continued hearing.

At the continued hearing, the bankruptcy court granted the motion to compel but stated that the deposition could not be taken for 30 days to allow Debtor's motion for protective order to be heard. The court stated that if the motion for protective order was not granted and Debtor continued to refuse to testify, Plaintiffs were authorized to file a motion for terminating sanctions.

4

After a hearing, the bankruptcy court denied Debtor's second motion for a protective order and ruled that Plaintiffs could ask questions about Debtor's diagnosis, his medications, and their purpose and side effects, but ordered that Plaintiffs could not ask Debtor questions about specific conversations with his psychotherapist. Debtor appealed that decision. We affirmed in part and reversed in part. *Jakubaitis v. Padilla (In re Jakubaitis)*, 604 B.R 562, 577 (9th Cir. BAP 2019).

## B. The Contempt OSC And Terminating Sanctions

In February 2019, while the appeal of the order compelling Debtor's deposition was pending, Plaintiffs filed a motion for sanctions seeking to hold Debtor in contempt for failing to comply with the October 2016 order compelling production of documents. Plaintiffs noted that the court had previously ordered Debtor to comply with discovery rules and imposed monetary sanctions, but Debtor continued to ignore orders and had not paid sanctions ordered by the court despite having monthly income of approximately $10,000. Plaintiffs sought terminating sanctions against Debtor, or alternatively, monetary sanctions in the amount of $1,950.

Debtor opposed the motion and argued that Plaintiffs failed to make any showing of willfulness, bad faith, or substantial fault which is required for terminating sanctions. Debtor stated that he complied with the court's order compelling production and served his responses on Plaintiffs. He referred to "Respondent's Exhibit C 'Copies and proof of service' dated xx/xx/xxxx," but he did not attach any exhibit to his opposition. He also

disputed Plaintiffs' assertion that he had monthly income of $10,000 and suggested that the court had already reviewed his income when it granted two applications for fee waivers.

In March 2019, the bankruptcy court issued the Contempt OSC which required responses from Debtor, Mrs. Jakubaitis, and Plaintiffs to several specific issues raised by the court. The court ordered the parties to appear at a hearing on May 2, 2019, and to support their responses with appropriate declarations and evidence. The Contempt OSC specifically stated that "[i]f inability to pay the sanctions is to be argued, it must be supported in writing." The Contempt OSC further stated, "[i]f the court is not given satisfactory responses, sanctions including monetary sanctions or striking of pleadings as terminating sanctions, may issue." The parties stipulated to continue the hearing to May 9, 2019.

Plaintiffs responded to the Contempt OSC by filing a declaration and a request for judicial notice. Plaintiffs outlined the history of Debtor's failures to comply with court orders and cooperate in discovery in the adversary proceeding and in related state court litigation. Plaintiffs stated in their response that Debtor had yet to provide any evidence why he should not be held in contempt. Debtor did not file any written response to the Contempt OSC.

Prior to the hearing, the court issued a tentative decision which indicated the court's intent to strike Debtor's answer based on his failure to respond to the Contempt OSC. After the tentative decision was issued, and

6

one day before the hearing, Debtor filed an *ex parte* motion to continue the hearing.

Debtor argued that the court was divested of jurisdiction to issue terminating sanctions due to the pending appeal of the order compelling his deposition. Debtor also stated in his motion to continue that "counsel for [Debtor] due to the heavy press of other business, including bankruptcy matter in Chapter 13 and in adversary cases in Santa Ana, in Riverside, and Los Angeles, has had inadequate time to review and respond adequately."

At the hearing, Debtor acknowledged that he had not paid the monetary sanctions and said that he thought he sent the responses to the production request. Plaintiffs argued that they had not received any documents in response to the request for production and that Debtor failed to respond to the Contempt OSC despite the court's warning that such failure would result in the court striking the answer.

The bankruptcy court adopted the tentative and struck Debtor's answer to the complaint. Although Mrs. Jakubaitis had been previously dismissed from the case, an order had not been entered. But, because she filed an answer to the complaint and failed to respond to the Contempt OSC, the court also struck her answer.

Debtor filed a motion for reconsideration and argued that: (1) striking Mrs. Jakubaitis's answer was clear error because she was dismissed from the case; (2) his failure to respond to the Contempt OSC was not willful or in bad faith because Plaintiffs failed to comply with service requirements

for the motion and the Contempt OSC and thus, due process was not satisfied; (3) the doctrines of laches and waiver barred Plaintiffs from seeking sanctions based on the 2016 order compelling production; and (4) the court made an implicit finding that Debtor was impecunious, and therefore unable to pay the monetary sanctions, when it granted him leave to proceed *in forma pauperis* in the pending appeal.

The bankruptcy court denied the motion for reconsideration. It held that Debtor had sufficient notice of the Contempt OSC and the hearing, and Debtor waived any technical service errors. The court noted that Debtor offered no argument or evidence to demonstrate his inability to comply with the court's prior order compelling discovery. Finally, the court said that Debtor failed to respond in writing as required by the Contempt OSC and monetary sanctions had proven to be ineffective.

After striking the answer, the bankruptcy court directed that the case would proceed to a "default prove-up," and it permitted Debtor to file a brief regarding the standard for a default judgment.

## C. The Default Judgment And Debtor's Civil Rule 60(b) Motions

After the court struck Debtor's answer, Plaintiffs filed a motion for default judgment. They sought revocation of Debtor's discharge pursuant to § 727(d) for false statements made under oath. In addition to the allegations that Debtor underreported his income, Plaintiffs asserted that Debtor made materially false declarations about the existence and value of a loan Debtor made to WeCosign, Inc. Plaintiffs also sought judgment

8

against Debtor and Mrs. Jakubaitis for the value of the loan under § 542. Plaintiffs requested to amend the complaint as necessary to conform to the evidence.

Plaintiffs supported their motion for default judgment with a declaration from their attorney, a request for judicial notice, a separate statement of accounts, and a statement of undisputed facts. They submitted evidence including financial records from WeCosign, Inc., which Plaintiffs obtained from a court appointed receiver. Plaintiffs asserted that the documents evidenced the existence and amount of the loan and indicated that payments were made on the loan to Debtor and Mrs. Jakubaitis after Debtor made sworn statements that the loan was forgiven and had no value.

In response, Debtor provided an expert opinion that a financial statement submitted by Plaintiffs to demonstrate the existence of the WeCosign loan appeared to have been altered. Debtor also argued that Plaintiffs failed to satisfy the procedural requirements for a default judgment because they did not seek entry of a default prior to filing the motion for default judgment. He also objected to other evidence submitted by Plaintiffs and argued that Plaintiffs were seeking different relief in their application than in their complaint.

The bankruptcy court issued its tentative ruling, indicating its intent to enter judgment revoking Debtor's discharge but to deny judgment on the Turnover Claim because it did not find legal or evidentiary support for

a monetary judgment. At the hearing, Debtor argued that because the court did not find that the monetary judgment was warranted, it should render judgment in his favor on the Turnover Claim.

In September 2019, the bankruptcy court entered an order granting the motion pursuant to the terms of the tentative ruling. It entered separate findings of fact and conclusions of law, and the judgment revoking Debtor's discharge, on September 24, 2019. The findings of fact and conclusions of law stated "[w]ith regard to matter of a turnover of assets to the estate claim, that claim is dismissed without prejudice."

On October 2, 2019, Debtor filed a motion to vacate the judgment under Civil Rule 60(b). He argued that: (1) Plaintiffs committed fraud by presenting altered evidence; (2) the judgment was void because Mr. Marshack lacked standing and Debtor's due process rights were violated by the provisions in the order which permitted Plaintiffs to pursue Debtor and Mrs. Jakubaitis on other claims; (3) Debtor's failures to respond to the order compelling production and the Contempt OSC were caused by his attorney's excusable neglect; (4) Plaintiffs' failure to obtain entry of default before seeking a default judgment constituted "extraordinary circumstances" justifying relief under Civil Rule 60(b)(6); and (5) the bankruptcy court was required to enter judgment in favor of Debtor on the Turnover Claim.

Debtor filed an amended Civil Rule 60(b) motion on October 25, 2019. The amended motion included minor changes but otherwise made the

10

same arguments for relief as the original motion. Plaintiffs opposed the motion and argued that Debtor did not support the motion with any declaration or other evidence and all the arguments made by Debtor were previously raised in his motion for reconsideration and rejected by the court.

On November 7, 2019, Debtor filed a notice of errata and an amended Civil Rule 60(b) motion, which supplemented the motion with a declaration of Debtor's attorney. Plaintiffs filed another opposition and reiterated that Debtor's arguments and the declaration were merely a rehash of prior arguments that the court had already rejected.

The bankruptcy court denied Debtor's motion and Debtor timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(J). Plaintiffs argue that Debtor's notice of appeal was untimely, and we therefore lack jurisdiction. We have jurisdiction to determine our own jurisdiction and do so de novo. *Wilkins v. Menchaca (In re Wilkins)*, 587 B.R. 97, 100 (9th Cir. BAP 2018).

Under Rule 8002, "a notice of appeal must be filed with the bankruptcy clerk within 14 days after the entry of the judgment, order, or decree being appealed." If a party files a Civil Rule 60(b) motion within 14 days of the judgment, the time to appeal runs "from the entry of the order disposing of the last such remaining motion." Rule 8002(b).

11

Plaintiffs argue that although Debtor filed his Civil Rule 60(b) motion within 14 days of the judgment, Debtor effectively withdrew it when he filed the amended motions. Plaintiffs do not cite any authority supporting their contention that the amended motions operated to withdraw the original motion. Debtor supplemented the original motion with a declaration, but his basis for relief did not change. Debtor timely filed his Civil Rule 60(b) motion which extended the time to appeal under Rule 8002(b). The bankruptcy court disposed of Debtor's request for relief when it denied the motion on December 30, 2019. Because the time to appeal runs from the entry of the order disposing of Debtor's motion, the appeal was timely, and we have jurisdiction.

## ISSUES

Did the bankruptcy court abuse its discretion by striking Debtor's answer?

Did the bankruptcy court abuse its discretion by entering the default judgment against Debtor?

Did the bankruptcy court abuse its discretion by denying Debtor's Civil Rule 60(b) motion?

## STANDARDS OF REVIEW

We review the bankruptcy court's order striking Debtor's answer as a sanction and the court's entry of default judgment for abuse of discretion. *Hester v. Vision Airlines, Inc.*, 687 F.3d 1162, 1169 (9th Cir. 2012); *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986). "Absent a definite and firm

12

conviction that the [bankruptcy] court made a clear error in judgment, this court will not overturn a [Civil] Rule 37 sanction." *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1408 (9th Cir. 1990).

We also review the bankruptcy court's decision under Civil Rule 60(b) for abuse of discretion. *United Student Funds, Inc. v. Wylie (In re Wylie)*, 349 B.R. 204, 208 (9th Cir. BAP 2006). A bankruptcy court abuses its discretion if it applies an incorrect legal standard or its factual findings are illogical, implausible, or without support in the record. *TrafficSchool.com, Inc. v. Edriver, Inc.*, 653 F.3d 820, 832 (9th Cir. 2011).

"Where the sanction results in default, the sanctioned party's violations must be due to the 'willfulness, bad faith, or fault' of the party." *Jorgensen v. Cassiday*, 320 F.3d 906, 912 (9th Cir. 2003) (quoting *Hyde & Drath v. Baker*, 24 F.3d 1162, 1167 (9th Cir 1994)). We review the bankruptcy court's finding of willfulness, bad faith, or fault for clear error. *Id.* Factual findings are clearly erroneous if they are illogical, implausible, or without support in the record. *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010).

## DISCUSSION

Debtor argues that the bankruptcy court erred by striking his answer because the Contempt OSC was unrelated to the merits of the case and his failure to respond was caused by his attorney's excusable neglect. He asserts that the court erred by entering the judgment without a separate entry of default and argues that default judgment was not appropriate

13

because public policy favors resolution of cases on their merits, material facts were in dispute, and evidence submitted by Plaintiffs was altered. He also argues that the bankruptcy court was required to either grant judgment in Debtor's favor on the Turnover Claim or dismiss it with prejudice. Finally, Debtor contends that the court erred by denying his Civil Rule 60(b) motion.

## A. The Bankruptcy Court Did Not Abuse Its Discretion By Striking Debtor's Answer

Pursuant to Civil Rule 37(b)(2)(a), if a party "fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders [including] . . . (iii) striking pleadings in whole or in part." The bankruptcy court also has inherent authority to control its docket and "[i]n the exercise of that power [it] may impose sanctions including, where appropriate, default or dismissal." *Thompson v. Hous. Auth. of City of L.A.*, 782 F.2d 829, 830 (9th Cir. 1986).

### 1. Debtor's Sanctionable Conduct Was The Result Of Willfulness, Bad Faith, or Fault

Before considering severe sanctions, such as striking an answer or entering default judgment, the bankruptcy court must first determine that the party's sanctionable conduct is the result of "willfulness, bad faith, or fault" of that party. *Jorgensen*, 320 F.3d at 912. In the context of sanctions, "'disobedient conduct not shown to be outside the control of the litigant' is all that is required to demonstrate willfulness, bad faith, or fault." *Henry v.*

14

*Gill Indus., Inc.*, 983 F.2d 943, 948 (9th Cir. 1993) (quoting *Fjelstad v. Am. Honda Motor Co.*, 762 F.2d 1334, 1341 (9th Cir. 1985)). Debtor argues that his failure to respond to the Contempt OSC or the court's order compelling production of documents was not the result of his willfulness, bad faith, or fault, but rather the excusable neglect of his attorney.

Debtor has not demonstrated that his attorney's negligence was excusable. Debtor's attorney stated that his former paralegal misfiled the production responses and he was unaware of the error. He also stated that although he received the Contempt OSC, due to "staffing issues and other bankruptcy and litigation related matters [he] did not see the order . . . or it did not register to [him] that the entry was what it was."

At least regarding the Contempt OSC, the record does not support Debtor's contention. His attorney received Plaintiffs' response to the Contempt OSC which indicated that Debtor had not provided any evidence why he should not be held in contempt. And Debtor's attorney was sufficiently aware of the Contempt OSC to meet and confer with Plaintiffs' counsel and file a stipulated motion to continue the hearing to May 9, 2019. Debtor's counsel then filed an *ex parte* motion to continue the May 9, 2019 hearing but made no mention of his failure to understand the obligation to respond to the Contempt OSC. Instead, he stated that "due to the heavy press of other business," he had "inadequate time to review and respond adequately."

15

Debtor offered no explanation why he failed to either pay the monetary sanctions ordered by the court or seek relief from that order, and he has not shown that his failure to respond to the Contempt OSC was outside of his control. The bankruptcy court did not clearly err in determining that the sanctionable conduct was a result of Debtor's willfulness, bad faith, or fault.

## 2.    Case-Dispositive Sanctions Were Appropriate

The Ninth Circuit has constructed a five-part test to determine whether a case-dispositive sanction, such as striking an answer in full, is just.[5] *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007). The test requires the bankruptcy court to consider: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Id*.

It is not necessary for the bankruptcy court to make explicit findings regarding these factors and we review the record independently to determine whether case-dispositive sanctions were an abuse of discretion. *Adriana Int'l Corp.*, 913 F.2d at 1412 (citing *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 130 (9th Cir. 1987)). We may affirm case-dispositive sanctions

---

[5] We apply this five-factor test whether the bankruptcy court's case-dispositive sanction is pursuant to Civil Rule 37(b) or its inherent authority. *See Adriana Int'l Corp.*, 913 F.2d at 1412 n.4.

"where at least four factors support . . . or where at least three factors strongly support [case-dispositive sanctions]." *Dreith v. Nu Image, Inc.*, 648 F.3d 779, 788 (9th Cir. 2011) (quoting *Yourish v. Cal. Amplifier*, 191 F.3d 983, 990 (9th Cir. 1999)).

When a party violates a court order, the first two factors support sanctions and the fourth factor weighs against a default. *Adriana Int'l Corp.*, 913 F.2d at 1412. Therefore, the third and fifth factors are decisive.

In determining the risk of prejudice, we consider whether the Debtor's actions impaired Plaintiffs' ability to go to trial or threatened to interfere with the rightful decision of the case. *Id.* We evaluate prejudice in part with reference to Debtor's excuse for failing to comply with the Contempt OSC. *Malone*, 833 F.2d at 131. "Failure to produce documents as ordered . . . is considered sufficient prejudice." *Adriana Int'l Corp.*, 913 F.2d at 1412 (citing *Sec. & Exch. Comm'n v. Seaboard Corp.*, 666 F.2d 414, 417 (9th Cir. 1982)).

Here, Debtor's repeated failures to comply with bankruptcy court orders, including to produce documents and to respond to the Contempt OSC, interfered with the rightful decision of the case. Debtor has offered no cogent excuse for his failures to comply with court orders. The third factor supports striking the answer.

The fifth factor requires the bankruptcy court to consider lesser sanctions. Under this factor, we determine whether the bankruptcy court "considered lesser sanctions, whether it tried them, and whether it warned

17

the recalcitrant party about the possibility of case-dispositive sanctions." *Conn. Gen. Life Ins. Co.*, 482 F.3d at 1096. In egregious cases, where the bankruptcy court imposes alternative sanctions before striking an answer, "such an inquiry is not necessary." *Adriana Int'l Corp.*, 913 F.2d at 1413.

The bankruptcy court previously imposed monetary sanctions against Debtor for his failures to comply with discovery orders. Debtor did not pay those sanctions. The bankruptcy court considered further monetary sanctions but had no reason to believe they would be effective. The court warned Debtor numerous times that continued failures to comply could result in case-dispositive sanctions. The fifth factor supports case-dispositive sanctions.

Debtor argues that striking his answer was improper because the Contempt OSC was unrelated to merits of the case. He suggests that the bankruptcy court struck his answer as punishment for appealing the court's order denying a protective order and compelling his deposition.

The record is clear that the bankruptcy court struck Debtor's answer because he failed to respond to the Contempt OSC and failed to explain why he had not complied with prior court orders. The bankruptcy court repeatedly warned Debtor that continued noncompliance would result in case-dispositive sanctions. But Debtor did not respond to the Contempt OSC as ordered, did not produce the documents required by the order compelling production, and did not pay the sanctions ordered by the court.

18

The court's order striking Debtor's answer was directly related to Debtor's continued discovery abuses which affected the merits of the case, and the court also had inherent authority to strike Debtor's answer for failing to comply with court orders. The bankruptcy court did not abuse its discretion by striking Debtor's answer.

**B.** **The Bankruptcy Court Did Not Abuse Its Discretion By Entering Default Judgment Revoking Debtor's Discharge**

**1.** **Separate Entry of Default Was Not Required**

Civil Rule 55(a) applies "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . ." Debtor did not fail to plead or otherwise defend the case. It is true that entry of a default is a prerequisite to a default judgment where a party has not pleaded or otherwise defended the case, but "[Civil] Rule 55(a) does not represent the only source of authority in the rules for the entry of a default that may lead to judgment." C. Wright & A. Miller, 10A Fed. Prac. & Proc. Civ. § 2682 (4th ed. 2020).

Here, a separate entry of default serves no purpose. Debtor was aware that the court struck his answer as a sanction and the case would proceed by a default prove-up hearing. The order striking Debtor's answer operated the same as an entry of default and had the same effect. All well-pleaded allegations in the complaint were admitted, all affirmative defenses were struck, and Debtor's liability was established. *See Adriana Int'l Corp.*, 913 F.2d at 1414 (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557,

19

560 (9th Cir. 1977)); *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298 (11th Cir. 2009) ("Because the answer and counterclaims were struck, Appellants had defaulted."). The court was not required to separately enter default under Civil Rule 55(a).

## 2. Entry of Default Judgment Was Not an Abuse of Discretion

The bankruptcy court had broad discretion to grant default judgment. *Kubick v. FDIC (In re Kubick)*, 171 B.R. 658, 659 (9th Cir. BAP 1994). We will not disturb a default judgment if "(1) the defendant's culpable conduct led to the default; (2) the defendant has no meritorious defense; or (3) the plaintiffs would be prejudiced if the judgment is set aside." *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988).

If the default judgment was entered because of Debtor's culpable conduct, "we need not consider whether a meritorious defense was shown, or whether the plaintiff would suffer prejudice if the judgment were set aside." *Id.* (quotation marks and citations omitted). "[A] defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and intentionally failed to answer." *TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 697 (9th Cir. 2001) (quoting *Alan Newman Prods.*, 862 F.2d at 1392), *overruled on other grounds by Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141 (2001).

The bankruptcy court necessarily determined that Debtor's conduct was culpable when it struck his answer. Debtor received notice of the

20

Contempt OSC and intentionally failed to answer. Although he contends his failure to respond was attributable to his attorney's excusable neglect, that neglect was not excusable. Debtor also failed, without explanation, to pay the monetary sanctions ordered by the court or to produce documents required by the order compelling production.

Debtor also argues that the bankruptcy court erred by entering default judgment because material facts were disputed, public policy favors resolution on the merits, and the evidence submitted by Plaintiffs was altered.

The policy favoring resolution on the merits is part of the five-factor test which must be considered prior to entering case-dispositive sanctions. As discussed above, this factor weighs against striking the answer, but it does not overcome the remaining factors which support terminating sanctions.

The existence of disputed facts is similarly unavailing. After the bankruptcy court struck Debtor's answer, all well-pleaded facts in the complaint are taken as true, except as to damages. *Adriana Int'l Corp.*, 913 F.2d at 1414; *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

And, although Debtor suggests that evidence had been altered, the bankruptcy court did not need to rely on the evidence to enter judgment. Plaintiffs' allegations that Debtor made a false oath about his income were

21

admitted once the answer was struck and those allegations are sufficient to revoke Debtor's discharge without evidence related to the WeCosign loan.

The bankruptcy court did not clearly err in finding Debtor's conduct to be culpable and it did not abuse its discretion by entering default judgment.

### 3.  Debtor Was Not Entitled to Judgment on The Turnover Claim

Debtor contends that the bankruptcy court erred by not entering judgment in his favor on the Turnover Claim. He does not cite any authority for this proposition, but we have previously held:

> While a trial court has great discretion in considering issues and evidence in a hearing pursuant to Rule 55(b)(2), we find no authority that would allow a trial court to enter judgment in favor of the defaulting party following such a hearing. To enter such a judgment against the non-defaulting party because of the failure of that party to sustain its burden of proof would make the hearing under Rule 55(b)(2) the same as a trial on the merits.

*Valley Oak Credit Union v. Villegas (In re Villegas),* 132 B.R. 742, 746-47 (9th Cir. BAP 1991); *but see All Points Capital Corp. v. Meyer (In re Meyer)*, 373 B.R. 84, 89 (9th Cir. BAP 2007) ("If the plaintiff is not entitled to the relief requested, the court should not enter default judgment and may even enter judgment in favor of the defaulted defendant.") (citing *Cashco Fin. Servs., Inc. v. McGee (In re McGee),* 359 B.R. 764, 771–72 (9th Cir. BAP 2006); *Wells Fargo Bank v. Beltran (In re Beltran),* 182 B.R. 820, 823–24 (9th Cir. BAP 1995)).

Even if the bankruptcy court had authority to enter judgment in favor of Debtor on the Turnover Claim, it was not required to do so. All defenses that Debtor may have against future claims are preserved by the order dismissing the Turnover Claim.

**C.  The Bankruptcy Court Did Not Abuse Its Discretion By Denying Debtor's Civil Rule 60(b) Motion**

Debtor argues that the bankruptcy court should have vacated the default judgment under Civil Rule 60(b)(1), (b)(3), and (b)(4). All of Debtor's arguments for relief were raised in his motion for reconsideration of the order striking his answer, or in opposition to the motion for default judgment. Debtor cannot use a Civil Rule 60(b) motion to reargue points already made, or that could have been made, in dispute of the underlying motion. *Branam v. Crowder (In re Branam)*, 226 B.R. 45, 55 (9th Cir. BAP 1998), *aff'd,* 205 F.3d 1350 (9th Cir. 1999). We find no merit in Debtor's arguments for relief under Civil Rule 60(b).

## CONCLUSION

Based on the foregoing, we AFFIRM the bankruptcy court's order striking Debtor's answer and the default judgment revoking Debtor's discharge.

23