Filed 3/13/23  Nash v. Aprea CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| THOMAS NASH et al., | B319309 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. 21STCV28570) |
| v. | |
| NINON APREA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Armen Tamzarian, Judge.  Affirmed.

Sigelman Law Corp and Paul Sigelman for Defendant and Appellant.

Linzer Law Group and Kenneth A. Linzer for Plaintiffs and Respondents Thomas Nash and Bo Kyung O'Connor.

_____

Ninon Aprea appeals from the default judgment entered in favor of Thomas Nash and Bo Kyung O'Connor and from the trial court's orders denying her motion to vacate the default judgment and her motion for reconsideration. Nash and O'Connor sued Aprea for breach of contract and bad faith retention of a security deposit in connection with their six-month rental of Aprea's residential property on North Martel Avenue in Los Angeles (Martel property). The summons and complaint were served by substituted service on a man at the Martel property who identified himself as Aprea's roommate, with a copy mailed to the same address. After Aprea failed to file an answer, the clerk entered a default, and the trial court later entered a default judgment for $59,191.

On appeal, Aprea contends the default judgment is void because the summons and complaint were not properly served pursuant to Code of Civil Procedure[1] section 415.20, subdivision (b), because the Martel property was not Aprea's dwelling house or usual place of abode, and the parties' lease agreement provided for notices to be delivered to a commercial mailbox facility. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Complaint*

On August 3, 2021 Nash and O'Connor filed a complaint against Aprea alleging causes of action for breach of written contract, breach of oral contract, breach of the covenant of good faith and fair dealing, and bad faith retention of a security

---

[1]    Further undesignated statutory references are to the Code of Civil Procedure.

2

deposit in violation of Civil Code section 1950.5.[2] The complaint alleged that on August 10, 2020 Nash and O'Connor entered into a written residential lease agreement (lease) with Aprea to rent the Martel property for the following six months for $8,000 per month, payable as an advance lump sum of $48,000, plus a $16,000 security deposit. On the same day Nash and O'Connor paid $64,000 to Aprea. During their tenancy, Nash and O'Connor discovered mold in a guest house that was part of the leased premises, and in January 2021 their real estate agent and Aprea's real estate agent reached an agreement for Aprea to return $8,000 of the rent payment as a mold credit. Nash and O'Connor performed their obligations under the lease, but after they vacated the premises in February 2021, Aprea did not pay the mold credit, return the security deposit, or identify claimed deductions from the deposit. The prayer for relief sought compensatory damages of at least $24,000, statutory damages under Civil Code section 1950.5 for twice the amount of the $16,000 security deposit, prejudgment interest, and attorneys' fees and costs.

---

[2] Civil Code section 1950.5 governs landlord and tenant obligations with respect to security deposits for rentals of residential property. Section 1950.5, subdivision (g)(1), provides in relevant part, "No later than 21 calendar days after the tenant has vacated the premises . . . the landlord shall furnish the tenant . . . a copy of an itemized statement indicating the basis for, and the amount of, any security received and the disposition of the security, and shall return any remaining portion of the security to the tenant." Subdivision (*l*) provides that the landlord's bad faith retention of a security deposit in violation of the provision may subject the landlord to statutory damages (in addition to actual damages) of up to twice the amount of the security deposit.

3

The complaint attached the lease as an exhibit.  The lease utilized a form published by the California Association of Realtors and reflected that Aprea was the owner of the Martel property and the landlord.  Paragraph 32 of the lease, entitled "Notice," stated that "[n]otices may be served at the following address or at any other location subsequently designated," and listed 8033 Sunset Blvd., Suite 966 in Los Angeles (Sunset Boulevard address) for Aprea as the landlord, and the Martel property for Nash and O'Connor as the tenants.

The complaint also attached a demand letter dated June 25, 2021 signed by Nash and O'Connor's lawyer, Kenneth Linzer, alleging a violation of Civil Code section 1950.5, subdivision (*l*), and demanding payment of the $16,000 security deposit and $8,000 mold credit.  The demand letter was addressed to Aprea at the Martel property address and to an email address incorporating Aprea's name.  A July 29, 2021 email from Linzer (through his legal assistant) directed to Aprea at the same email address, also attached to the complaint, stated that Aprea had failed to respond to the demand letter and advised Aprea that Nash and O'Connor would be filing the attached draft complaint if Aprea did not respond by August 2, 2021.

B.     *Proof of Service and Entry of Default and Default Judgment*
        On September 2, 2021 Nash and O'Connor filed an amended proof of service of the summons and complaint by substituted service at the Martel property.[3]  The proof of service was signed by Robert Brooks, a registered process server working

---

[3]     The register of actions reflects that the original proof of service by substituted service was filed August 17, 2021, but it is not in the record on appeal.

4

for Nationwide Legal, LLC.  It stated that on the morning of August 9, 2021 Brooks served Aprea in her individual capacity by leaving the summons with "Abdulla Binsaeed—Roommate."  The proof of service included a declaration of diligence in which Brooks attested he made three attempts to serve the summons on Aprea at the Martel property: on August 6, 2021 Brooks "[k]nocked on the door, which was answered by the individual[] we are looking for['s] roommate who stated she was not at home at this time and try again at another time"; on August 7, Brooks "[k]nocked on the door loudly several times with no answer and no activity heard inside the home"; and on August 9 he made substituted service "by serving: Abdulla Binsaeed—Roommate, Middle Eastern Male 36-40 181-200 Lbs Brown 5'7-6'0 Brown." Brooks also signed a proof of service by mail attesting that on April 9, 2021 he mailed the summons to Aprea at the Martel property address.

On September 22, 2021 Nash and O'Connor filed a request for entry of default, which the clerk entered the same day.  Nash and O'Connor subsequently submitted a request for entry of default judgment in the amount of $59,191, comprised of $56,000 in damages, $1,533 in prejudgment interest, $1,000 in attorneys' fees, and $658 in costs.  In his supporting declaration, Linzer stated the $56,000 in damages included $8,000 for the rent credit, $16,000 for the security deposit, and $32,000 in statutory damages under section 1950.5, subdivision (*l*).  Linzer's declaration attached the complaint, the attachments to the complaint (including the lease, demand letter, and email with the draft complaint), the proofs of substituted service and service by mail, and documents supporting Nash and O'Connor's request for attorneys' fees and costs.

On November 10, 2021 the trial court entered a default judgment against Aprea in the amount of $59,191.

C.      *Aprea's Motion To Vacate the Default Judgment*

On November 29, 2021 Aprea, represented by attorney Paul Sigelman, filed a motion to vacate entry of default and default judgment (motion to vacate).  Aprea argued service of the summons at the Martel property was ineffective because substituted service was not made at her "'dwelling house'" or "'usual place of abode,'" as required under section 415.20, subdivision (b).  Aprea asserted (supported by copies of text messages attached to her declaration) that when the parties negotiated the lease, Nash and O'Connor's real estate agent, Tori Barnao, sent a text message to Aprea's real estate agent, Gersh Gershunoff, asking, "'[D]oes [Aprea] have an address she wants to use?  [¶]  I like to put something [in] case any notice needs to be delivered.'"  Gershunoff responded with the Sunset Boulevard address.  Yet, according to Aprea, Nash and O'Connor "ignored the agreed place for service and instead proceeded by substituted service at the very location they themselves had rented, by handing the summons and complaint to the new tenant at that location, representing to the Court that it could be a 'roommate' . . . ."  Further, Nash and O'Connor "knew full-well it was the one place [Aprea] did not live, did not reside, and did not have a place of business" because it was the property they rented at the address the lease provided for notices to Nash and O'Connor, not Aprea.

In Aprea's supporting declaration dated November 29, 2021, she stated the Sunset Boulevard address "is the address at which I reside and from where the lease was entered by myself."

Aprea averred that Barnao told Nash and O'Connor the Martel property was used as a rental property, and therefore, when Nash and O'Connor claimed to have left the summons with a "roommate" at the Martel property, they knew the man was not a roommate, but a new tenant who was then occupying the property. Aprea's declaration attached a letter dated October 22, 2021 from Sigelman to Linzer stating that Sigelman had met that day with Aprea, "who received an email from your office pertaining to a default in the above case," and Sigelman would be representing Aprea in the dispute. Sigelman asserted in his letter that he had downloaded the case file from the superior court, and Brooks's statement in his service declaration that Binsaeed was Aprea's roommate was clearly a misrepresentation because Aprea lived at the Sunset Boulevard address. Further, Binsaeed was "not related in any manner, is a stranger to the case, never said that he was a roommate, and has no actual or apparent authority to accept substituted service on her behalf." Although Sigelman's letter was attached to Aprea's declaration, he did not submit a declaration, and the motion to vacate did not attach any evidence disputing that Binsaeed spoke to Brooks, received the summons, and told Brooks he was Aprea's roommate.

In their opposition, Nash and O'Connor argued Aprea did not seek relief from the default judgment based on citation to a specific statutory scheme; Aprea did not provide sufficient evidence to rebut the presumption under Evidence Code section 647 that Brooks's sworn statement he served Aprea's roommate was true; and Aprea never asserted she did not receive actual notice of the complaint (noting Aprea received notice of Nash and O'Connor's complaint by email before it was filed).

7

Further, the Martel property was the proper place for substituted service because the notice provision of the lease did not displace section 415.20's service requirements, authorizing substituted service by "'leaving a copy of the summons and complaint at the person's dwelling house, usual place of abode, usual place of business, or usual mailing address[.]'" Moreover, contrary to Aprea's contention, the Sunset Boulevard address could not have been Aprea's "'dwelling house'" or "usual place of abode" because it was a UPS commercial mailbox location.

Linzer submitted a supporting declaration presenting evidence the Martel property was Aprea's usual place of residence. Linzer stated Barnao told Nash and O'Connor the Martel property was Aprea's residence. Further, Linzer spoke with the manager of the UPS store at the Sunset Boulevard address, who stated there were no residences at that address; rather, suite 966 consisted only of commercial mailboxes. Linzer attached a May 2017 email from Aprea to a Los Angeles City Councilmember in connection with proposed legislation restricting short-term rentals, in which Aprea stated she owned the Martel property "for years" and it "is not a vacation rental, but part of the home I live in." Linzer also attached a December 2021 credit report identifying Aprea as the owner of the Martel property and no other real property.[4] He also submitted copies of current listings for both the main house and guest house from an online home-sharing service that identified Aprea as the "host."

---

[4] The credit report also identified the Sunset Boulevard address as being associated with Aprea, but it lists eight "[c]urrent [c]ommercial [p]hones" for that address, including the UPS store.

8

Aprea did not file evidentiary objections or a reply in support of her motion to vacate.

After a hearing, on January 7, 2022 the trial court denied Aprea's motion to vacate. In its final ruling, the court found Aprea cited only the law of substituted service and provided no authority for relief from entry of default or default judgment. The court considered and rejected three legal theories for relief from a default judgment. First, Aprea was not entitled to relief under section 473, subdivision (b), because she did not attempt to show the default was taken due to her or Sigelman's mistake, inadvertence, surprise, or excusable neglect. Second, Aprea was not entitled to relief under section 473.5, subdivision (a), because she did not show she lacked actual notice in time to defend the action, and no evidence supported her assertion that Binsaeed had no relation to Aprea and was not her roommate. The court found to the contrary that Aprea "had actual notice in time to defend the action, either through Binsaeed or via some method." Third, the default and default judgment were not void and subject to vacatur under section 473, subdivision (d), or thecourt's equitable power because there was no defect apparent in the judgment roll. Instead, "any defect hinges on accepting defendant's evidence . . . that substituted service was invalid because the [Martel property] is not defendant's "'dwelling house, usual place of abode, usual place of business, or usual mailing address.' . . . Just because [Aprea] did not live there when plaintiffs rented it does not mean she did not live there at the time of substituted service." The court also considered Nash and O'Connor's evidence showing Aprea could not reside at the Sunset Boulevard address because it was a commercial mailbox location and evidence she had lived at the Martel property

9

address, including her 2017 correspondence with the City Councilmember. The court found by a preponderance of the evidence service was proper at the Martel address and Aprea had actual notice in time to defend the action.

D.    *Aprea's Motion for Reconsideration*

On January 19, 2022 Aprea filed a motion for reconsideration, or in the alternative, a renewed motion to vacate the default judgment under the trial court's equitable powers. Aprea argued she was entitled to relief from the default because she lacked actual notice in time to defend the action (§ 473.5) and due to the mistake and neglect of her attorney (§ 473, subd. (b)).

Aprea averred in her supporting declaration that she owned the Martel property but had not resided or transacted business there for five years. Nash and O'Connor knew Aprea did not live at the property because she was not present during their tenancy and Aprea had told their realtor (Barnao) on multiple occasions that she had been renting a home in Benedict Canyon for the last several years. Aprea did not know Binsaeed, who stayed at the Martel property for 10 days in August 2021 through the online home-sharing service, but she understood he was a businessman living in the Middle East who did not speak any English. Aprea had been travelling outside California and did not go to the Martel property until October 10, 2021, when she made an inspection of the house and found an envelope containing the summons and complaint on the front porch. Although "[a] lawsuit may have been threatened," it was not until October 10, 2021, after the default was entered, that Aprea became aware that someone had attempted service. Aprea stated she had no knowledge of the proof of service until after she

10

retained Sigelman and read the documents he downloaded from the court website. Further, it was not until January 7, 2022, at the hearing on her motion to vacate, that Aprea learned Brooks stated in his declaration of diligence that Binsaeed told Brooks he was Aprea's roommate and she was not home. At that point Aprea realized Brooks's statement must be false because Binsaeed spoke no English. Aprea then obtained Binsaeed's telephone number through the online home-sharing service, and Binsaeed agreed to sign a declaration prepared by Sigelman, with Binsaeed's input.

Binsaeed's declaration stated in English he was a resident of Saudi Arabia, and during his stay at the Martel property he did not believe he was handed "any papers, by anyone coming to the home . . . ." He did not recall "any conversation with anyone wherein I said that Ninon Aprea was my roommate or that she lived at the house where I was staying." Binsaeed declared he did not speak English and used a computer translation application to translate the declaration.

Sigelman averred in his declaration that Aprea had a valid defense to the action and he was responsible for multiple instances of inadvertence. Specifically, after he was retained by Aprea, he downloaded the proof of service but failed to tell Aprea that Brooks claimed in his declaration of diligence that he had spoken with Binsaeed, which would have alerted Aprea to the fact Brooks's declaration was not credible because Binsaeed spoke no English. Also, due to an oversight of his assistant during the year-end holidays, Sigelman did not realize Nash and O'Connor had filed an opposition to Aprea's motion to vacate,

11

which he thought was unopposed.[5]  Because of an acute infection following a recent knee surgery, Sigelman asked another attorney to appear at the hearing on the motion to vacate, and Sigelman only learned after it was "too late" the arguments made in the opposition.  Had Sigelman attended the hearing, he would have "answered the Court's questions posed by its ruling" and "would have conferred with [Aprea] as to the claimed conversation of Mr. Brooks."

In their opposition, Nash and O'Connor argued Aprea was not entitled to relief under section 1008 because she failed to introduce new or different facts that were not available at the time of the motion to vacate.  Her assertion she lacked actual notice of the action, even if credible, could have been asserted in the original motion.  Further, after Aprea learned of the action and that service was made during Binsaeed's stay at the Martel property, she could have attempted at that time to contact Binsaeed (in October 2021), before she filed her motion to vacate (on November 29, 2021).  Moreover, Aprea's assertion Brooks could not have had a conversation with Binsaeed was not credible because Brooks knew how to spell Binsaeed's last name correctly.  Finally, Aprea was not entitled to relief under section 473, subdivision (b), based on Sigelman's mistake or inadvertence because Aprea provided no evidence that the default was caused by Sigelman.

---

[5]     Sigelman's assistant submitted a declaration stating she overlooked an email notification on December 23, 2021 that papers (the opposition) had been electronically served in the action, and she was out of the office until January 3, 2022.  Sigelman later asked her whether they had received anything in the action, but she said no.

12

Nash and O'Connor filed evidentiary objections, including that the Binsaeed declaration was inadmissible in its entirety under Evidence Code section 753[6] because it was translated into English using a translation software, not a qualified translator under oath. Nash and O'Connor also objected to large portions of the Aprea declaration for lack of foundation, speculation, and hearsay.

In reply, Aprea filed a supplemental declaration in English signed by Binsaeed, as well as an Arabic version also signed by Binsaeed. Hany Farag, a certified translator, submitted a declaration stating that Sigelman read Binsaeed's February 28, 2022 declaration out loud to Farag, which Farag translated sentence by sentence for Binsaeed, and Binsaeed confirmed in Arabic the statements were his. The translator wrote out the declaration in Arabic with an English translation for Binsaeed to sign.

After a hearing, on March 7, 2022 the trial court denied the motion for reconsideration. The court sustained Nash and O'Connor's objections to Aprea's and Binsaeed's declarations.[7] The court found Aprea made no attempt to show why she could not have previously presented the facts supporting her

---

[6] Evidence Code section 753, subdivision (a), provides that "[w]hen the written characters in a writing offered in evidence are incapable of being deciphered or understood directly, a translator who can decipher the characters or understand the language shall be sworn to decipher or translate the writing."

[7] The trial court held Binsaeed's initial declaration was inadmissible because Binsaeed testified he did not speak English and Aprea failed to lay a proper foundation for Binsaeed's assertion the statement was accurately translated. The court did not address Binsaeed's reply declaration.

13

reconsideration motion. Sigelman's declaration concerning his inadvertence did not provide a basis for relief under section 473, subdivision (b), because "the errors he asserts could not have caused the default or default judgment themselves. His errors relate to the motion for relief from default . . . . A mistake after the default judgment could not have caused the default judgment."

Aprea timely appealed.

## DISCUSSION

A.  *The Trial Court Did Not Err in Denying Aprea's Motion To Vacate*

1.  *Relief from void judgments and standard of review*

If a court "lack[s] fundamental authority over the subject matter, question presented, or party, . . . its judgment [is] void." (*In re Marriage of Goddard* (2004) 33 Cal.4th 49, 56; accord, *First American Title Insurance Co. v. Banerjee* (2022) 87 Cal.App.5th 37, 42 (*First American*) ["'A default judgment is void if the trial court lacked jurisdiction over the parties.'"].) "A default judgment entered against a defendant who was not served in the manner prescribed by statute is void." (*First American*, at p. 42; see *Ramos v. Homeward Residential, Inc.* (2014) 223 Cal.App.4th 1434, 1442 (*Ramos*) [default and default judgment void for lack of proper service on corporate agent]; *Carr v. Kamins* (2007) 151 Cal.App.4th 929, 933 [default judgment void for ineffective service by publication].)

Section 473, subdivision (d), provides a trial court "may, on motion of either party after notice to the other party, set aside any void judgment or order." Under section 473, subdivision (d),

14

a trial court may set aside a default judgment that is valid on its face but void as a matter of law due to improper service. (*First American, supra*, 87 Cal.App.5th at p. 42; *Ellard v. Conway* (2001) 94 Cal.App.4th 540, 544.) However, where a motion to vacate a default or default judgment is made more than six months after entry of the judgment, the judgment may only be set aside if the judgment is void on its face. (*Kremerman v. White* (2021) 71 Cal.App.5th 358, 369 (*Kremerman*); *Ramos, supra*, 223 Cal.App.4th at p. 1440; *Dill v. Berquist Construction Co.* (1994) 24 Cal.App.4th 1426, 1441.) "'"A judgment or order is said to be void on its face when the invalidity is apparent upon an inspection of the judgment-roll."'" (*Ramos,* at p. 1440; accord, *Dill*, at p. 1441.) "When a judgment by default has been entered, the judgment roll is limited to the summons, proof of service of the summons, complaint, request for entry of default, copy of the judgment, notice of any ruling overruling a demurrer interposed by the defendant and proof of service thereof, and, if service was by publication, affidavit for publication and order directing it." (*Ramos*, at p. 1440, citing § 670, subd. (a).)

We review the trial court's determination whether a judgment is void on its face under section 473, subdivision (d), de novo. (*Kremerman, supra*, 71 Cal.App.5th at p. 369; *Pittman v. Beck Park Apartments Ltd.* (2018) 20 Cal.App.5th 1009, 1020; *Ramos, supra*, 223 Cal.App.4th at p. 1440 ["Because any defect in service must appear on the face of the judgment roll as delimited by the documents specified in section 670, subdivision (a), our review of a trial court's order finding such a facial defect is of necessity de novo."].) However, where the trial court considers disputed evidence in deciding whether to set aside a void judgment under section 473, subdivision (d), we review the

15

decision for an abuse of discretion. (*First American, supra*, 87 Cal.App.5th at p. 42; *Ramos*, at p. 1440-1441.) A trial court abuses its discretion if its ruling "exceeded the bounds of reason." (*Strathvale Holdings v. E.B.H.* (2005) 126 Cal.App.4th 1241, 1249 [applying abuse of discretion standard in reviewing trial court's grant of motion to vacate judgment for lack of personal jurisdiction based on extrinsic evidence]; accord, *Grados v. Shiau* (2021) 63 Cal.App.5th 1042, 1049.) If a ruling turns on a disputed issue of fact, we will not disturb the trial court's express and implied factual determinations if supported by substantial evidence. (*Strathvale Holdings*, at p. 1250; *First American*, at p. 42 ["we defer to factual findings on disputed evidence so long as those findings are supported by substantial evidence."])

In reviewing a ruling on a request to set aside a default judgment, we are mindful of the public policy favoring a trial on the merits. (See *Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 978, 981-982 [granting equitable relief from default judgment where defendants' failure to pay entirety of filing fee for answer was based on incorrect information from clerk's office].) "Because the law favors disposing of cases on their merits, 'any doubts in applying section 473 must be resolved in favor of the party seeking relief from default [citations]. Therefore, a trial court order denying relief is scrutinized more carefully than an order permitting trial on the merits.'" (*Rappleyea*, at p. 980; accord, *McClain v. Kissler* (2019) 39 Cal.App.5th 399, 413.)

2. *Substantial evidence supports the trial court's finding substituted service at the Martel property was valid*

Aprea contends on appeal the trial court erred in denying her motion to vacate because she was not properly served by

16

substitute service given the lack of diligence, and further, she did not live at the Martel property address.[8] As discussed, the trial court found the judgment roll did not support Aprea's argument she was not properly served, and the evidence submitted by Nash and O'Conner showed Aprea lived at the Martel property address, not the Sunset Boulevard address. Substantial evidence supports the trial court's findings.

---

[8] Aprea does not directly address the grounds (or code sections) for relief from the default and default judgment. However, her central contention is the judgment is void because service of the summons and complaint at the Martel property was defective. We review Aprea's contention in the context of whether the trial court abused its discretion in denying her motion under section 473, subdivision (d). Aprea also challenges the default judgment on the same ground, and accordingly, our analysis of whether Aprea was properly served applies to her appeal from the default judgment as well. We address Aprea's contention the trial court abused its discretion in denying relief from the default judgment under section 473, subdivision (b), in our discussion of Aprea's motion for reconsideration. Aprea does not contend the trial court erred in denying relief under section 473.5, subdivision (a), after finding she had actual notice of the action.

As to service of the summons, Aprea did not argue in the trial court or in her appellate briefing that three attempts at service did not constitute diligence, instead asserting the attempts were made at the wrong address. Aprea likewise does not contend Linzer acted improperly in entering her default without contacting her to let her know he would enter a default if she did not respond to the complaint. Although we are troubled by the lack of any effort by Linzer to contact Aprea before entering her default, Aprea has forfeited any challenge on this basis.

17

Section 415.20, subdivision (b), provides that if a copy of the summons and complaint "cannot with reasonable diligence be personally delivered to the person served," service may be made by leaving a copy "at the person's dwelling house, usual place of abode, usual place of business, or usual mailing address . . . in the presence of a competent member of the household or a person apparently in charge of [the defendant's] office, place of business, or usual mailing address," and thereafter mailing a copy to the same address. The filing of a proof of service that complies with the statutory requirements creates a rebuttable presumption that service was proper. (*Hearn v. Howard* (2009) 177 Cal.App.4th 1193, 1205; *Dill v. Berquist Construction Co., supra*, 24 Cal.App.4th at pp. 1441-1442; see Evid. Code § 647 [the return of a registered process server "establishes a presumption, affecting the burden of producing evidence, of the facts stated in the return"].)

"'The terms "dwelling house" and "usual place of abode" take their meaning from the Federal Rules.'" (*Zirbes v. Stratton* (1986) 187 Cal.App.3d 1407, 1417, quoting Judicial Council of Cal., com., reprinted at 14 West's Ann. Code Civ. Proc. (1972 ed.) foll. § 415.20, p. 554 [substituted service at defendant's mother's house was ineffective because defendant had "established a separate legal household where she resided with her children which was a matter of public record" and declared she "neither resided at her mother's residence nor received mail there"].) Federal courts construing the provision for substituted service at a person's "dwelling or usual place of abode"[9] have found that a

_____

[9]     Rule 4(e)(2)(B) of the Federal Rules of Civil Procedure (28 U.S.C.) authorizes service by "leaving a copy [of the summons and complaint] at the individual's dwelling or usual place of

18

"person can have more than one dwelling house or usual place of abode" (*Stars' Desert Inn Hotel & Country Club, Inc. v. Hwang* (9th Cir. 1997) 105 F.3d 521, 524), but each residence must bear "sufficient indicia of permanence" to be valid. (*National Development Co. v. Triad Holding Corp.* (2d Cir. 1991) 930 F.2d 253, 258 [although defendant resided in apartment for only 34 days in the previous year, there was "sufficient indicia of permanence" where defendant had remodeled and furnished the apartment to suit his lifestyle]; see *Asmodus, Inc. v. Junbiao Ou* (C.D.Cal., Feb 3, 2017, No. EDCV162511), 2017 WL 5592914, at p. *7 [investment property qualified as defendant's "dwelling house or usual place of abode" where there was evidence he resided there "sporadically" throughout the year].)

The "reasonable diligence" requirement of section 415.20, subdivision (b), means "an individual may be served by substitute service only after a good faith effort at personal service has first been made . . . . Two or three attempts to personally serve a defendant at a proper place ordinarily qualifies as '"reasonable diligence."'" (*American Express Centurion Bank v. Zara* (2011) 199 Cal.App.4th 383, 389; accord, *Rodriguez v. Cho* (2015) 236 Cal.App.4th 742, 750.) Moreover, "'[s]ervice must be made upon a person whose "relationship with the person to be served makes it more likely than not that they will deliver process to the named party."'" (*Hearn v. Howard, supra*, 177 Cal.App.4th at p. 1203 [substituted service effective where plaintiff served defendant by substituted service on post office box rental store clerk at address listed by attorney defendant as her business address on her letterhead and on State Bar website].)

---

abode with someone of suitable age and discretion who resides there. . . ."

The documents in the judgment roll supported the trial court's finding the Martel property was Aprea's "dwelling house" or "usual place of abode."[10] The lease reflects Aprea owned the Martel property (which Nash and O'Connor alleged in the complaint was a "residential dwelling"), and Aprea leased the dwelling for six months to Nash and O'Connor. The lawsuit was filed several months after the Nash and O'Connor's tenancy concluded. Brooks, a registered process server, declared that on his first service attempt at the Martel property on August 6, 2021, Aprea's "roommate" answered the door and stated Aprea "was not at home at this time and [he should] try again at another time."[11] On the second attempt, Brooks knocked on the door loudly, but there was no answer, and he could not hear any activity in the home. On the third attempt on August 9, 2021,

---

[10] Although Aprea's motion was filed within six months of entry of the default judgment, the trial court considered the documents in the judgment roll first, then the extrinsic evidence submitted by the parties. We likewise consider the evidence in this order.

[11] In her opening brief, Aprea describes Brooks's declaration as a "hearsay conversation" with Binsaeed. Aprea did not object on hearsay grounds, and the objection is forfeited. (Evid. Code, § 353, subd. (a) ["A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless: [¶] (a) There appears of record an objection to or a motion to exclude or to strike the evidence that was timely made and so stated as to make clear the specific ground of the objection or motion."]; *People v. Eubanks* (2011) 53 Cal.4th 110, 142; *Duronslet v. Kamps* (2012) 203 Cal.App.4th 717, 725 [the failure to object to the admission of hearsay documents in the trial court forfeits the issue on appeal].)

Brooks served the roommate (Binsaeed), recording the roommate's name and physical description. Brooks's declaration on its face supports the court's finding that Aprea was living at the Martel property given Brooks's attestation that Binsaeed was Aprea's "roommate"[12] and Brooks should try again later, suggesting Aprea could reasonably be expected to be there at a later time. (See *First American, supra*, 87 Cal.App.5th at p. 43 [concluding substitute service was proper based in part on fact the person who accepted service identified himself to process server as "coresident" of defendant].)

Aprea contends the documents in the judgment roll do not establish the Martel property was her "dwelling house" or "usual place or abode" because the lease provided that "[n]otices may be served" to Aprea at the Sunset Boulevard address. We are not persuaded. First, the lease, in stating that notices must be served at the Sunset Boulevard address, does not bar service by other methods. Second, the lease does not define "notices," let alone specify that notices encompass legal service of a court summons (for which the Code of Civil Procedure specifies the proper method for service of process). Third, it is a reasonable inference the parties understood the notice provision to contemplate notices given only during the tenancy, given that the

---

[12] Merriam-Webster dictionary defines a roommate as "one of two or more persons sharing the same room or living quarters." (Merriam-Webster's Online Dict. (2022) <https://www.merriam-webster.com/dictionary/roommate> [as of March 14, 2023].) The Cambridge Dictionary defines a roommate, in American usage, as "a person who you share an apartment or house with." (Cambridge English Dict. Online <https://dictionary.cambridge.org/us/dictionary/english/roommate> [as of March 14, 2023].")

21

parties agreed that notices to Nash and O'Connor could be sent to the Martel property.

Aprea argues further the notice provision in the lease shows that the Sunset Boulevard address is Aprea's "usual mailing address," and a commercial mailbox facility is required to accept substituted service on behalf of its mailbox customers. (See Bus. & Prof. Code § 17538.5, subds. (c) & (d)(1) ["commercial mail receiving agency" providing private mailbox receiving service must obtain customer's authorization to act as agent for service of process, accept service, and timely provide served documents to the customer].)  However, there is no evidence the Sunset Boulevard address is a commercial mailbox or that the location is a commercial mail receiving agency.  And even if it were reasonable to infer from the notice provision that the Sunset Boulevard address was Aprea's "usual mailing address" or her "business address," it does not follow that service at her "dwelling house" or "usual place of abode" at the Martel property was not also effective.

*Kremerman, supra*, 71 Cal.App.5th at pages 372 to 373, relied on by Aprea, does not support her position.  In *Kremerman*, the plaintiff unsuccessfully attempted to serve the defendant at her residential address multiple times, then filed a proof of service by substituted service on an employee of a commercial mailbox facility where the defendant maintained a private mailbox, and then obtained a default judgment.  (*Id*. at pp. 364-365.)  In reversing the trial court's grant of the defendant's motion to vacate the default judgment, the Court of Appeal observed that section 415.20, subdivision (c), provides that substituted service at a commercial mailbox is effective only "'if *the only address reasonably known* for the person . . . is a private

22

mailbox obtained through a commercial mail receiving agency.'" (*Kremerman*, at p. 373.) Because it was undisputed that the defendant had another address (her home address on a document attached to the complaint), substituted service was not valid. (*Ibid.*)

For the first time in her reply brief, Aprea argues service was defective because Brooks checked the box on the proof of substituted service for "business" rather than "home,"[13] and on his declaration of diligence he indicated the Martel property was a "business" location. Aprea failed to raise this argument in the trial court or in her opening brief, and it is forfeited. (See *People v. Duff* (2014) 58 Cal.4th 527, 550, fn. 9, ["the claim is omitted from the opening brief and thus waived"]; *Quiles v. Parent* (2018) 28 Cal.App.5th 1000, 1013 ["'Failure to raise specific challenges in the trial court forfeits the claim on appeal.'"].) Although, as pointed out by Aprea's counsel at oral argument, a challenge to jurisdiction may be raised at any time, Aprea has not provided any authority for the proposition an error on a proof of service prevents a court from exercising jurisdiction over a defendant if

---

[13] On the proof of service form approved by the Judicial Council for mandatory use (Form POS-010) there is a box for substituted service, where Brooks entered the details of the service, including the date, time, Binsaeed's name, physical description, and the description of Binsaeed as Aprea's "roommate." Below that Brooks checked the first box for "business," which states service was on "a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served." Brooks did not check the second box for "home," which states service was on "a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party."

there is sufficient evidence the defendant was properly served with the summons. The facts entered by Brooks on the proof of service, including service on Aprea's "roommate," along with the lease and complaint showing Aprea owned the property, provide substantial evidence Aprea was served at her "dwelling house" or "usual place of abode."

Moreover, in addition to the judgment roll evidence, Nash and O'Connor submitted evidence that in 2017 Aprea stated to her local government representative in connection with a proposed ordinance regulating home sharing rentals that she lived at the Martel property and wanted to operate it as a short-term rental while occupying it. As of December 2021, Aprea listed both the house and its guest unit on a home-sharing website. Aprea's credit report showed she owned the Martel property and did not own other real property. And Linzer's declaration stated the Sunset Boulevard address was a commercial mailbox address, which, as the trial court found, was more credible than Aprea's assertion in her declaration that the Sunset Boulevard address "is the address at which I reside and from where the lease was entered by myself."

Aprea responds, as she did in the trial court, that Nash and O'Connor knew Aprea did not reside at the Martel property in light of the notice provision in the lease, and further, Aprea was not present during their tenancy. Thus, she argues, any service attempts at the Martel property address instead of the Sunset Boulevard address were not reasonably diligent. But the fact Nash and O'Connor rented Aprea's furnished home for their exclusive use for six months does not show that Aprea did not live

24

in the residence after the lease expired.[14]  Aprea also argues Brooks's declaration was not credible because Binsaeed was not her roommate.  But in her motion to vacate she relied for this assertion only on Sigelman's letter to Linzer stating Binsaeed was not related to Aprea, he did not say he was a roommate, and he had no actual or apparent authority to accept substituted service on her behalf.  Aprea did not deny in her declaration that she knew Binsaeed or that he was a roommate, and she did not submit any other evidence refuting Brooks's declaration.  Therefore, Aprea has failed to rebut the presumption that the facts in Brooks's declaration of diligence are true (Evid. Code § 647), and the trial court did not abuse its discretion in crediting the proof of service and Nash and O'Connor's evidence over Aprea's minimal showing.

B.    *The Trial Court Did Not Abuse Its Discretion in Denying Aprea's Motion for Reconsideration*

Aprea contends the trial court abused its discretion in denying her motion for reconsideration, which requested the court set aside the default and default judgment under section 473, subdivision (b), based on her attorney's mistake and inadvertence.  She argues Sigelman's failure to carefully review the service documents prevented her from earlier seeking a declaration from Binsaeed, who attested he spoke no English and

---

[14]    The parties dispute whether Barnao told Nash and O'Connor the Martel property was Aprea's residence.  Linzer in his declaration stated Barnao did; Aprea stated the contrary in her declaration.  And Barnao did not file a declaration.  The trial court did not make factual findings as to what Barnao said, and we do not consider these hearsay statements in our review.

had no recollection of receiving papers or telling anyone he was Aprea's roommate. The court did not abuse its discretion.

Section 1008, subdivision (a), provides that a party may make a motion to reconsider a prior order "based upon new or different facts, circumstances, or law." "'A party seeking reconsideration also must provide a satisfactory explanation for the failure to produce the evidence at an earlier time.'" (*Yolo County Dept. of Child Support Services v. Myers* (2016) 248 Cal.App.4th 42, 50; accord, *Torres v. Design Group Facility Solutions, Inc.* (2020) 45 Cal.App.5th 239, 243.) "[T]he moving party's burden is the same as that of a party seeking new trial on the ground of 'newly discovered evidence, material for the party making the application, which he could not, with reasonable diligence, have discovered and produced at the trial.'" (*Baldwin v. Home Savings of America* (1997) 59 Cal.App.4th 1192, 1198 (Italics omitted).) We review a trial court's ruling on a motion for reconsideration for an abuse of discretion. (*Torres*, at p. 243; *Schep v. Capital One, N.A.* (2017) 12 Cal.App.5th 1331, 1339.)

Section 473, subdivision (b), provides in relevant part, "The court may, upon any terms as may be just, relieve a party . . . from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect."[15] To qualify for discretionary

---

[15] Section 473, subdivision (b), also provides for mandatory relief from a default and default judgment based on the mistake or inadvertence of a party's attorney: "[T]he court shall, whenever an application for relief is made no more than six months after entry of judgment, is in proper form, and is accompanied by an attorney's sworn affidavit attesting to his or her mistake, inadvertence, surprise, or neglect, vacate any (1) resulting default entered by the clerk against his or her client,

26

relief under section 473, subdivision (b), "the party seeking relief must show (1) a proper ground for relief, and (2) 'the party has raised that ground in a procedurally proper manner, within any applicable time limits.'" (*Henderson v. Pacific Gas & Electric Co.* (2010) 187 Cal.App.4th 215, 229; accord, *Huh v. Wang* (2007) 158 Cal.App.4th 1406, 1419.) The trial court has discretion to grant relief under section 473, subdivision (b), "based on its evaluation of the nature of the mistake or error alleged and the justification proffered for the conduct that occurred." (*Austin v. Los Angeles Unified School Dist.* (2016) 244 Cal.App.4th 918, 928.)

As discussed, the trial court denied Aprea's motion for reconsideration based on its finding Aprea failed to provide a reason why she did not discover the evidence offered in support of her reconsideration motion prior to filing her motion to vacate. Clearly Aprea's new declaration—including statements she had not lived at the Martel property for five years, she was renting a

---

and which will result in entry of a default judgment, or (2) resulting default judgment or dismissal entered against his or her client, unless the court finds that the default or dismissal was not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect." However, mandatory relief is not available where counsel was retained after the entry of default. (See *Cisneros v. Vueve* (1995) 37 Cal.App.4th 906, 910-911 ["for mandatory relief to apply the court must also satisfy itself that the *default* (i.e., the failure to respond) was in fact caused by attorney mistake or neglect," which cannot occur where "it is undisputed that [the attorney] was not hired until after the defendants' default was taken"].) Aprea contends she first learned a lawsuit had been filed when she hired Sigelman in October 2021, one month after the clerk had entered the default on September 22.

home in Benedict Canyon during Nash and O'Connor's tenancy, and she was travelling during the summer of 2021 and did not inspect the property until October 10, 2021—could have been presented in her November 29, 2021 motion to vacate. (See *Yolo County Dept. of Child Support Services v. Myers, supra,* 248 Cal.App.4th at p. 50 [trial court did not abuse its discretion in denying child support obligor's motion for reconsideration of denial of a motion to vacate a default judgment where obligor's exhibits included letters addressed to him at a different location from the one at which the summons was served, and all but one of the letters were dated before the motion to vacate].) Moreover, the trial court did not abuse its discretion in excluding Binsaeed's declaration for lack of foundation in light of the fact Binsaeed spoke no English, yet Sigelman drafted the declaration in English with unspecified input from Binsaeed using a translation software.

Aprea does not dispute Binsaeed's declaration in English was defective; rather, she argues the trial court ignored his reply declaration in Arabic. Although the court's written ruling does not discuss the Arabic declaration, it was well within the court's discretion to exclude the later declaration as untimely reply evidence to which Nash and O'Connor had no opportunity to respond. (See *Jay v. Mahaffey* (2013) 218 Cal.App.4th 1522, 1537-1538 ["'[T]he inclusion of additional evidentiary matter with the reply should only be allowed in the exceptional case"]; cf. *Alliant Ins. Services, Inc. v. Gaddy* (2008) 159 Cal.App.4th 1292, 1308 ["the trial court had discretion whether to accept new evidence with the reply papers" so long as the other party had an opportunity to respond].) Moreover, Aprea has not provided a reporter's transcript of the hearing (or settled statement) to show

28

whether there was any discussion at the hearing of the supplemental Binsaeed declaration or a request by Aprea for the court to consider the late evidence.  The trial court may well have found Aprea had failed to show why she could not have obtained a proper Binsaeed declaration earlier given the minimal showing made by Aprea in her supporting declaration that she "had no idea how to find Mr. Binsaeed."

## DISPOSITION

The default judgment and the orders denying Aprea's motions to set aside the default judgment and for reconsideration are affirmed.  Nash and O'Connor are to recover their costs on appeal.


FEUER, J.


We concur:


PERLUSS, P. J.


SEGAL, J.


29